UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DR. LOUIS EMOVBIRA WILLIAMS,

               Plaintiff,

   v.

FEDERAL GOVERNMENT OF NIGERIA;
ATTORNEY GENERAL OF THE FEDERAL
GOVERNMENT OF NIGERIA; CENTRAL
BANK OF NIGERIA; JPMORGAN CHASE &
CO.; and JOHN DOES 1 - 10,

               Defendants.

Case No.: 1:23-cv-07356-(LJM)(SDA)

NOTICE OF MOTION

**DEFENDANTS FEDERAL GOVERNMENT OF NIGERIA AND ATTORNEY
GENERAL OF THE FEDERAL GOVERNMENT OF NIGERIA'S, NOTICE OF
MOTION TO DISMISS**

    PLEASE TAKE NOTICE that upon the accompanying memorandum of law, the annexed

Declaration of Gerald O. Egbase, Declaration of Gromyko Amedu, the accompanying exhibits,

1

together with the Plaintiff's complaint and all the papers filed in the proceeding, Defendants

Federal Government of Nigeria (FGN) and Attorney General of the Federal Government of

Nigeria (AG-FGN), by and through the undersigned counsel, hereby move to dismiss this action,

pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (5) & (6).

This Court lacks jurisdiction over Plaintiff's claims and lacks jurisdiction over the

Defendants. Plaintiff has also failed to state a claim upon which relief can be granted.


Dated:  September 19, 2023                         Respectfully submitted,

                                                   */s/ Gerald O.  Egbase*
                                                   Gerald O. Egbase
                                                   (*Pro Hac Vice* Admission Pending)
                                                   **AOE Law & Associates**
                                                   800 W. 1st Street, Suite 400
                                                   Los Angeles, California 90012
                                                   Tel:(213)620-7070
                                                   Fax(818)450-1456
                                                   Email:ge-aoe@baselaw.net
                                                       *Attorneys for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DR. LOUIS EMOVBIRA WILLIAMS,

             Plaintiff,

    v.

FEDERAL GOVERNMENT OF NIGERIA;
ATTORNEY GENERAL OF THE FEDERAL
GOVERNMENT OF NIGERIA; CENTRAL
BANK OF NIGERIA; JPMORGAN CHASE &
CO.; and JOHN DOES 1 - 10,

             Defendants.

Case No.: 1:23-cv-07356-(LJM)(SDA)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS FEDERAL GOVERNMENT OF NIGERIA AND ATTORNEY GENERAL OF THE FEDERAL GOVERNMENT OF NIGERIA'S, MOTION TO DISMISS**

1

## TABLE OF CONTENTS

Table of Authorities...................................................................................................... i

INTRODUCTION............................................................................................................ 2

ARGUMENT................................................................................................................... 5

Legal Standard .............................................................................................................. 5

I.      THE COURT LACKS JURISDICTION.................................................................7

A.  The Defendants Are Entitled To Immunity From Suit Under The FSIA,
28 U.S.C.§§1602,Et Seq. Hence Plaintiff's Complaint Should Be Dismissed…………...6

     i.        The Defendants Constitute Foreign State Within The Meaning of The
FISA…………………………………….....................................................8

     ii.      None of the Exceptions to Immunity From Jurisdiction  Is  Applicable
To The Action……………………………………………….......................9

B.  Plaintiff's Complaint And The Annexed Integral U.K. Judgment Unequivocally
Substantiates  The Defendants Position That Plaintiff's Action Cannot Overcome The
FSIA  Presumption Of   Immunity…....................................................................10

     i.        Defendant Did Not Agree To Waive Sovereign Immunity In United States
Courts....................................................................................................10

     ii.      Plaintiff Is Estopped From Contesting The Factual Findings In The U.K, Court's
Judgment and Court Order Attached To The Complaint ……………………… 11

     iii.    The Court Can Not Admit The Plaintiff's Factual Allegations That Are
Conclusively Contradicted By The Findings, Detailed In The U.K. Judgment
That The Plaintiff's Complaint Seeks To Enforce................................................. 12

     iv.    The Findings From the U.K Court Judgment Is Integral to the Plaintiff's
Complaint,  And Bars Plaintiff's Attempt To Overcome The Defendants FSIA
Immunity with Factual Averments Expressly contradicted by the U.K.
Judgment................................................................................................14

C.  Plaintiff Can Not Assert The Commercial Activity Exception ...................... 15

D.  The Expropriation Exception under §§1605(a)(3) Does Not Apply.................................17

E.  The "Tortious Act omission" Exception Does Not Apply…...............................................19

F.  There Is No Diversity Jurisdiction.....................................................................................20

G.  Plaintiff Failed To Comply With The Service Requirement of

28 U.S.C§§1608(a) .............................................................................................................20


II      THE CLAIMS AGAINST AG-FGN (GOVERNMENT OFFICIAL DEFENDANT)
SHOULD FURTHER BE DISMISSED......................................................................................23

A.  There is No Personal Jurisdiction Over The Defendant
AG-FNG (Governmental official Defendant) ...................................................................23

B.  Common Law Foreign Official Immunity Bars The Action Against
AG-FGN...............................................................................................................................24

III     PLAINTIFF'S ACTION SHOULD BE DISMISSED SINCE UNITED KINGDOM IS
THE APPROPRIATE AND CONVENIENT FORUM,  AND THE PARTIES
CONTRACTUALLY AGREE TO A FORUM SELECTION  CLAUSE
…………………………………..............................................................................................24

i.      Presumption of Enforceability of Contractual Forum Selection Clause ……..............25

ii.     U.K. Forum Is Adequate, Fair And Enforcement Does Not  Contravene
Any Public Policy............................................................................................................. 25

iii.    There Is No Deference To Plaintiff's Choice of Forum ...............................................26


IV  THE U,K. DEFAULT JUDGMENT IS NOT FINAL AND ENFORCEABLE  IN UNITED
KINGDOM  ........................................................................................................................... 28


Conclusion ........................................................................................................................... 29

# Table of Authorities

Cases                                                                                          Page (s)

*2A Moore Lucas, Moore's Federal Practice,*
 *¶ 12.08, at 2266-69 (2d ed. 1984)*................................................................................12

*119 Rosset Corp. v. Blimpy of New York Corp.,*
65 A.D.2d 683, 409 N.Y.S.2d 735, 736 (1st Dep't 1978)..............................................*14*

*Adler v. Federal Republic of Nigeria,*
107 F.3d 720, 723 (9th Cir. 1997)..................................................................................*8*

*Alberti v. Empresa Nicaragüense De La Carne,*
705 F.2d 250, 253 ........................................................................................................*20*

*Al-Owhali v. Ashcroft,*
*279 F. Supp. 2d 13, 6 20 (D.D.C. 2003)*.......................................................................*5*

*Alperin v.Vatican Bank,*
*360 Fed. Appx.* 847, 850 (9th Cir. 2009).....................................................................*17*

*Anglo Am. Ins. Group, P.L.C. v. Calfed*
*(S.D.N.Y. 1996) 940 F. Supp. 554, 566*........................................................................*26*

*Arabatzis Smith, Inc. v. Prometco (Produce Metals) Co.,*
470 F. Supp. 610, 616 (S.D.N.Y.1979*). *........................................................................*21*

*Argentine Republic v. Amerada Hess Shipping Corp.,*
488 U.S. 428,434(1989)........................................................................................*7,19,20*

*Asvesta v. Petroutsas*
(9th Cir. 2009) 580 F.3d 1000,1011..............................................................................*11*

*Attel Fin. S.A. v. Lefebvre*
(N.Y. Sup. Ct. 2022) 2022 N.Y. Slip Op. 31394, 6-7.....................................................*29*

*Axiom Inv. Advisors, LLC, v. Deutsche Bank AG,*
234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017*)*..................................................................*13*

*Barrett v. Tema Development*
*(1988)*, *Inc.*, 251 F. App'x 698, 700 (2d Cir. 2007).......................................................*23*

*Barter House, Inc. v. Infinity Spirits,*
*LLC* (S.D.N.Y., Aug. 5, 2019, 17 Civ. 9276 (PAE)) [pp. 36].............................................*23*

*Bell Atl. Corp. v. Twombly*
*550 U.S. 544, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007)*.................................................... 6

Bell Helicopter Textron, Inc. v. Islamic Republic of Iran,
*892 F. Supp. 2d 219, 226 (D.D.C. 2012)*.....................................................................16

Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.,
*137 S. Ct. 1312, 1318-19 (2017)*.....................................................................17

Bridgeway Corp. v. Citibank,
*45 F. Supp.2d 276, 286 (S.D.N.Y. 1999)* .....................................................................28

Chambers v. Time Warner, Inc.,
*282 F.3d 147, 153-54 & n.4 (2d Cir. 2002)* .....................................................................13

Chance v Taiwan,
1996 U.S. App. LEXIS 11811, at *2 (1st Cir. May 23, 1996)*.....................................................................16

CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.,
100 NY2d 215, 222, cert den 540 US 948 .....................................................................28

Cicippio v. Islamic Republic of Iran,
*30 F.3d 164, 167 (D.C. Cir. 1994*.....................................................................20

Conopco, Inc, v. Roll Inf
*1,231 F.3d 82, 86 (2d Cir.2000)*.....................................................................14

de Csepel v. Republic of Hung.,
*859 F.3d 1094, 1107 (2017*.....................................................................18,19

Dresdner Bank AG v. Haque
*(S.D.N.Y. 2001) 161 F. Supp. 2d 259, 262* .....................................................................28

EEOC v. St. Francis Xavier Parochial Sch.,
*326 U.S. App. D.C. 67, 117 F.3d 621, 624- 25
(D.C. Cir. 1997)*.....................................................................6

Eaglet Corp. v. Banco Cent. De Nicaragua,
*839 F. Supp. 232 (S.D.N.Y. 1993)* .....................................................................7

Fairchild, Arabatzis & Smith, Inc. v. Prometco
*(S.D.N.Y. 1979) 470 F. Supp. 610, 615-616*.....................................................................11,14,21

iv

*Fasano v. Yu*,
921 F.3d 333, 335 (2d Cir.2019)................................................................................*25*

*Fleming v. Lind-Waldock Co.*,
922 F.2d 20, 23-24 (1st Cir. 1990).............................................................................*13*

*Friedman v. Gov't of Abu Dhabi*
464 F. Supp. 3d 52, 61 (D.D.C. 2020) ..............................................................*8,15,16,20*

*Firebird Global Master Fund II Ltd. v. Republic of Nauru*,
*915 F. Supp. 2d 124 (D.D.C. 2013)*...........................................................................*7,10*

*First Nationwide Bank v. Gelt Funding Corp.*
(2d Cir. 1994) 27 F.3d 763, 771 ............................................................................*12*

*Goodman Holdings v. Rafidain Bank*,
26 F.3d at 1146–47(D.C. Cir. 1994), .........................................................................*17*

*Harris v. Mills*,
*572 F.3d 66, 72  (2d Cir. 2009)*...............................................................................*13*

*Hulton v. Staatsgemaldesammlungen*
*(S.D.N.Y. 2018) 346 F. Supp. 3d 546, 549*..................................................................*5*

*Gray v.Permanent Mission of People's Republic Congo United Nations*,
443F.Supp.816,822 (S.D.N.Y. 1978).........................................................................*22*

*Interpharm, Inc. v. Wells Fargo Bank*,
*Nat'lAss'n*, 655 F.3d 136, 141 (2d Cir. 2011)...............................................................*13*

*Iragorri v. United Techs. Corp.*,
*274 F.3d 65, 71 (2d Cir. 2001)* ...............................................................................*26*

*Kensington Int'l, Ltd. v. Itoua*,
*505 F.3d 147 (2d Cir. 2007*)....................................................................................*7*

*Kontrick v. Ryan*,
540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) ............................................*6*

*Lalasis v. Janata Bank*
*(N.Y. App. Div. 2008) 52 A.D. 3d  439, 440)* ..............................................................*7*

*Luckett v. Bure*,
290 F.3d 493, 496-97 (2d Cir. 2002)..........................................................................*5*

*Magness v. Russian Federation*
(5th Cir. 2001) 247 F.3d 609, 615......................................................................................*20,22*

*Magnus Elec., Inc., v. Royal Bank of Canada,*
620 F.Supp. 387, 389 (N.D.Ill. 1985),
*aff'd in part, rev'd in part on other grounds, 830 F.2d 1396* (7th Cir. 1987) ................................*22*

*Matar v. Dichter,*
500 F. Supp. 2d 284, 291 (S.D.N.Y. 2007)......................................................................*24*

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.,*
863 F.3d *96, 124 (2d Cir. 2017)*..................................................................................*20*

*Monagasque de Reassurances, S.A.M. v. Nak NaftogazofUkraine*,
*311F.3d488,500-01(2dCir.2002)*................................................................................*27*

*Nicholson v. The Bank of N.Y. Mellon*
(S.D.N.Y., Aug. 28, 2023, 22 Civ. 3177 (PGG) (KHP))...................................................*12,14*

*Odhiambo v. Republic of Kenya,*
*930 F. Supp. 2d 17, 23* (D.D.C. 2013), aff'd*764 F.3d 31* ...............................................*6*

 *Odyssey re (S.D.N.Y. 2000) 85 F. Supp. 2d 282, 306* ....................................................*27*

*Opati v. Republic of Sudan*
(2020) 140 S. Ct. 1601, 1605)....................................................................................*7*

*Owens v. Republic of Sudan,*
*864 F.3d 751, 784* (D.C. Cir. 2017)............................................................................*6*

*Overseas Dev. Bank in Liquidation v. Nothmann*
(N.Y. App. Div. 1985) 115 A.D.2d 719, 720) ...............................................................*28*

*Peterson v. Royal Kingdom of Saudi Arabia,*
 *416 F.3d 83 (D.C. Cir. 2005)*....................................................................................*17*

*Phillips v. Audio Active Ltd.,*
494 F.3d 378, 383-84, 392 (2d Cir. 2007)....................................................................*25*

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 236 (1981) ........................................................................................*25,26*

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C* ....................................................*26*

*Republic of Argentina v. Weltover, Inc.,*
*504 U.S. 607, 611, 112 S.Ct. 2160, 119 L.Ed.2d 394* (1992).........................................................*17*

*Republic of Iraq v. First Nat. City Bank*,
353F.2d 47, 51 (2d Cir. 1965).............................................................................................*18*

*Republic of Panama v. BCCI Holdings (Luxembourg),*
*S.A.,*119 F.3d 935, 952 (11th Cir. 1997)...............................................................................*27*

*Samantar v. Yousuf,*
560 U.S. 305, 325 (2010).............................................................................................*8,23*

*inter alia, Salahuddin V. Jones*
992 F.2d 447, 449 (2d Cir. 1993).......................................................................................*14*

*Sassower v. Abrams,*
833 F.Supp. 253, 264 n.17 (S.D.N.Y. 1993)...........................................................................*14*

*Scheiner v. Wallace*
*832 F. Supp. 687, 694(S.D.N.Y. 1993)*.................................................................................*11*

*Schuylkill Fuel Corp. v. B C Nieberg Realty Corp., Inc.,*
250 N.Y. 304, 306-07....................................................................................................*14*

*Shapiro v. Republic of Bolivia*,
930 F.2d 1013, 1017 (2d Cir. 1991).......................................................................................*10*

*SI Group Consort Ltd. v. Ukraine, 2017 U.S. Dist.*
*LEXIS 12515* (S.D.N.Y. Jan. 30, 2017).................................................................................*7*

*SI Group Consort Ltd. V. Ukraine, Ivano-Frankivsk State Admin*,
2017WL398400,at*2(S.D.N.Y.Jan.30,2017).........................................................................*10*

*Simon v. Republic of Hungary,*
*812 F.3d 127, 146-47 (D.C. Cir.2016)* ................................................................................*18*

*Smith v. United States,*
*518 F. Supp. 2d 139, 144, 2007 U.S. Dist. LEXIS 74871, *12 (D.D.C. 2007)*...................................*6*

*State Farm Fire & Cas. Co. v. Swizz Style, Inc.,*
246 F. Supp. 3d 880, 887 (S.D.N.Y. 2017) .............................................................................*23*

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
*30 F.3d 148, 154 (D.C. Cir. 1994)*..........................................................................22

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp,*
*204 F. 3d 384 (2d Cir. 2000)*................................................................................. 9

*Tuazon v. R.J. Reynolds Tobacco Co.,*
*433 F.3d 1163, 1178 (9th Cir. 2006)*......................................................................26

*United States v. Belmont,*
*301 U.S. 324, 332 (1937)*......................................................................................18

*VerlindenB.V.v.Central Bank of Nigeria,*
*461 U.S. 480, 483 (1983)* .....................................................................................9

*Villoldo v. Castro Ruz,*
*113 F. Supp. 3d 435, 438-39 (D. Mass. July 7, 2015)*.............................................18

*Whitfield v. O'Connell,*
*9 Civ. 1925 (WHP), 2010 WL 1010060, at \*4 (S.D.N.Y. Mar. 18, 2010)*.......................12

*Zanghi v. Ritella*
*(S.D.N.Y., Sep. 24, 2021, 19 Civ. 5830 (NRB))*.......................................................25

Zedan v. Kingdom of Saudi Arabia,
849 F.2d 1511, 1514 (D.C. Cir. 1988) ...................................................................17

<u>Other Authorities</u>

*N.Y. C.P.L.R. § 5302 (McKinney 2000)* ..................................................................28

*N.Y. CPLR § 5303*...................................................................................12,13,14

*CPLR 5304(a)(1)*......................................................................................28, 29

*CPLR 5306*................................................................................................28,29

<u>Additional Authorities</u>
*Restatement (Third) of Foreign Relations Law §712(1) (1987)* ..................................18

## INTRODUCTION

Defendants Federal Government of Nigeria (FGN) and Attorney General of the Federal Government of Nigeria (AG-FGN) (collectively, "Defendants"), submit this Memorandum of Law in Support of their Motion to Dismiss the Complaint of Plaintiff Doctor Louis Emovbira Williams ("Plaintiff")

Plaintiff's complaint seeks to enforce the default judgment he obtained from the United Kingdom on November 9, 2018 ("U.K. default Judgment or "default judgment"), against Nigeria, in the sum of $21,231,960.74 and £19,763.130.   The transcript of the findings from the default judgment and corresponding court Order are incorporated into the Plaintiff's complaint and annexed to the Plaintiff's complaint respectively as Exhibit G and Exhibit H. *(Compl. Exh. G and Compl. Exh. H),* and further attached to this motion respectively as (EXHIBIT 1 *(Exh. 1)(transcript)* and EXHIBIT 2 *(Exh. 2)(court Order))*

Plaintiff's complaint alleges that he is a Nigerian residing in London (*Compl.* ¶30), and that in the year 1986 he was tricked into a fraudulent transaction by a certain London solicitor named Mr. Reuben Gale who Plaintiff claimed was secretly acting on behalf of the Nigeria State Security Services (*Compl.* ¶¶*32-33).* Plaintiff claimed that during the transaction he gave Mr. Gale the sum of US $6,520,190 in Trust, as funds required to consummate the transaction. He asserts that the transaction resulted in his arrest, trial and a 10 year prison sentence in Nigeria. He also alleged that the funds he gave to Mr. Gale were transferred to the Central Bank of Nigeria and subsequently frozen by the Defendants.(*Compl.* ¶*34;* ¶*40.)* Plaintiff alleged that in 1989 he escaped from Nigeria and returned to London his adopted home (*Compl.* ¶ *35).*

Plaintiff claims that thereafter the Defendant FGN pardoned him on August 23, 1993 (*Compl.*¶¶ *36-39)* and issued a Fidelity Guarantee dated September 29, 1993 requiring his funds

seized by the Defendants together with punitive interest be paid to him (*Compl. ¶¶40-41*).  *(A  copy of the Fidelity Guarantee is attached to the Plaintiffs complaint as Exhibit B and attached herein as (EXHIBIT 3 (Exh. 3))[1]*

Plaintiff claimed that since Defendant FGN failed to comply with the payment terms of the Fidelity Guarantee, he filed an action before the High Court of Justice, Queen's Bench Division, Commercial Court, (U.K. Action) against the Defendants on Feb. 29, 2016.  On the U.K, action Plaintiff sought relief under two alternative claims.

The U.K. default judgment enumerates the Plaintiff's action in the U.K.  as follows:

*"The claim in this case is set out at paragraph 46 of the Particulars of Claim. In essence, the claimant seeks an order against the defendant that it should make payment pursuant to obligations under the Fidelity Guarantee and, in the alternative, the claimant brings a claim against the defendant that it is liable to account as a trustee for what it terms a dishonest breach of a 1986  trust. That is in relation to monies which were received by a solicitor, Mr Gale, and which the claimant says were then misappropriated."*

*See. (Exh. 1, ¶13, (Compl. Exh. G, ¶13)*

On November 9, 2018, the U.K. court conducted an evidentiary hearing on Plaintiff's request to enter a default judgment and <u>denied</u> the Plaintiff's application for default judgment on the claim against the Defendant to *make payment pursuant to obligations under the Fidelity Guarantee.* As enumerated in the U.K Judgment, Plaintiff's action, based on the Fidelity Guarantee is barred by Sovereign immunity. The court found that contrary to the Plaintiff's allegations, the Fidelity Guarantee does not substantiate that the defendants agreed to waive immunity.*(Exh. 1_ ¶¶ 14-16; (Compl. Exh. G; ¶¶ 14-16) also see.( Sec. ii and iii, pg. 2  Exh.2;   (Compl. Exh. H).)*  However, the U.K. Court proceeded to enter a default judgment against the Defendants only on the Plaintiff's alternate action for Defendants contractual liability for breach of 1986 Trust for the monies Plaintiff

---

[1] *"As this is a pre-answer motion to dismiss, we understand that the allegations in the complaint are assumed to be true, but only for purposes of the motion. Additionally, should the matter proceed hereafter, defendant will demonstrate that the purported Fidelity Guarantee is a forged document and not a document issued or authorized by the Nigerian Government or the Central Bank of Nigeria."*

claimed he gave to Mr. Gale in Trust and then was misappropriated. (*See. Exh.1,  ¶¶18-23, of the Transcript of Default Judgment, also annexed to Plaintiffs Compl. as Exh.G.  )*

The default judgment also found that Defendants have agreed to a manner of service to hand over the Pleadings to the Nigeria Foreign Affairs Minister in the U.K. (*see. ¶21, Exh.1* )

To enforce the default judgment, Plaintiff applied to obtain a Final Third Party Debtor Order (Final TPDO), (akin to a writ of execution), within the provision of U.K. laws regulating judgments obtained by default. (*see. ¶5 , Decl. of Gromyko Amedu*). The U.K, court set the hearing for the Plaintiff's application to obtain a Final TPDO, for October 7, 2020.  Prior to October 2020, the Defendants filed an application to set aside the Plaintiff's default judgment dated September 28, 2020. *see. (¶¶6-7 , Decl. of Gromyko Amedu)*  The Defendants application to set aside the default judgment, truncated the Plaintiff's process to secure a Final TPDO and vacated the October 7, 2020 hearing to issue a Final Third Party Debtor's Order (Final TPDO) on the U.K. default Judgment. *see. (¶¶6-7 , Decl. of Gromyko Amedu)*

On September 18, 2023, the U.K. court scheduled the hearing on the Defendant's application to set aside the U.K. default Judgment for October 27, 2023.   (*See Decl. of Gromyeko Amedu's  ¶ 15; also see. Exhibit H.  attached to Decl. of Gromyeko Amedu's  ( Correspondence by U.K. court's listing officer Michael Tame, confirming the scheduled  hearing for October 27, 2023.)*

Notwithstanding the findings in the 2018 U.K. default Judgment*,* in seeking to enforce the U.K. default Judgment through the instant action, Plaintiff filed a verified complaint riddled with subjective characterization and unsubstantiated conclusions expressly contradicted by fundamental findings in the U.K. default Judgment, and the corresponding Order incorporated as the substance of the Plaintiff's complaint.  Meanwhile, Plaintiff has failed to serve the Defendants (Sovereign State) in the manner which a sovereign state that agreed to service, may be served.

4

As detailed below, Defendants respectfully challenge this court's jurisdiction and further assert that the Plaintiff has failed to state a claim upon which any relief can be granted. Correspondingly the Plaintiff's Complaint should be dismissed because the Defendants are immune from suit under the Foreign Sovereign Immunities Act ("FSIA") and none of the exceptions to immunity set out therein ( 28 U.S.C. §§ 1602, et. seq.) applies.  Plaintiff has not properly served the Defendants in the manner required by § 1608 of the FSIA. Further, the complaint admits that the parties contractually agreed to submit any dispute resulting from their transaction to the jurisdiction of the U.K. courts.  Hence this court is required to further dismiss this action in the enforcement of the parties' contractual forum clause.  The jurisdiction of the U.K court is adequate and a fair forum for the Plaintiff's action.

## ARGUMENT

### Legal Standard

"In the context of a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists" *Hulton v. Staatsgemaldesammlungen (S.D.N.Y. 2018) 346 F. Supp. 3d 546, 549*. In ruling on such a motion, a court may consider evidence outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

"Rule 12(b)(1) presents a threshold challenge to the [C]ourt's jurisdiction, whereas 12(b)(6) presents a ruling on the merits with res judicata effect." *Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 20 (D.D.C. 2003)*. The two sub-parts of the rule are governed by distinct legal standards…" *Smith v. United States, 518 F. Supp. 2d 139, 144, 2007 U.S. Dist. LEXIS 74871, *12 (D.D.C. 2007).*

In the context of a motion to dismiss under Rule 12(b)(6), in addition to the facts alleged

in the complaint, the court considers any documents attached as exhibits thereto, and matters subject to judicial notice in weighing the merits of the motion. *EEOC v. St. Francis Xavier Parochial Sch*., 326 U.S. App. D.C. 67, 117 F.3d 621, 624- 25 (D.C. Cir. 1997). The Court's focus is restricted to the facts as alleged by the plaintiff, which must be sufficiently detailed "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007). It is incumbent upon the plaintiff to provide "more than labels and conclusions," id. at, *127 S. Ct. at 1959*, "and a formulaic recitation of a cause of action's elements will not do." Id." *Smith v. United States*, 518 F. Supp. 2d 139, 145, 2007 U.S. Dist. LEXIS 74871, *16-17 (D.D.C. 2007)

In an FSIA case, whether on a defendant's motion to dismiss or a plaintiff's motion for default judgment, the plaintiff "bears an initial burden of production to show an exception to immunity ... applies"; " *Owens v. Republic of Sudan*, 864 F.3d 751, 784 (D.C. Cir. 2017) (quotation omitted); see *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 23 (D.D.C. 2013), aff'd 764 F.3d 31 (D.C. Cir. 2014). The FSIA's enumerated exceptions are exhaustive: "if no exception applies, the district court has no jurisdiction." *Odhiambo v. Republic of Kenya*, 764 F.3d 31, 34 (D.C. Cir. 2014). And if a court lacks subject-matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added); *see Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004).

I.     **THE COURT LACKS JURISDICTION**

**A.  The Defendants Are Entitled To Immunity From Suit Under The FSIA, 28 U.S.C. §§ 1602, *et seq.* Hence Plaintiffs Complaint Should Be Dismissed.**

As a baseline rule, the FSIA holds that foreign states and their instrumentalities are immune from the jurisdiction of federal and state courts, see *Opati v. Republic of Sudan* (2020) 140 S. Ct. 1601, 1605also see. *Lalasis v. Janata Bank (N.Y. App. Div. 2008) 52 A.D. 3d  439, 440*;

By its terms, the FSIA immunizes "foreign state[s]" from the jurisdiction of U.S. courts. 28 U.S.C. § 1604. "Foreign state" is defined to include "an agency or instrumentality of a foreign state." Id. § 1603(a)).

FSIA provides the sole basis for obtaining jurisdiction over a foreign sovereign in the federal and state courts of the United States. See. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Since Section 1604 of the FSIA states the bedrock presumption of foreign sovereign immunity, the jurisdictional immunity in § 1604 is unqualified; if none of the specific exceptions in §§ 1605-1607 apply, there is no subject-matter jurisdiction. *Argentine Republic v. Amerada Hess Shipping Corp.,488 U.S. 428,434(1989).*

Courts have consistently held that an action against a foreign sovereign for recognition of a foreign judgment is subject to the FSIA. *Kensington Int'l, Ltd. v. Itoua, 505 F.3d 147 (2d Cir. 2007*) ($100 million London High Court judgment); *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F. 3d 384 (2d Cir. 2000) (Hong Kong judgments); *Firebird Global Master Fund II Ltd. v. Republic of Nauru, 915 F. Supp. 2d 124 (D.D.C. 2013)* (Tokyo District Court judgment*); SI Group Consort Ltd. v. Ukraine, 2017 U.S. Dist. LEXIS 12515* (S.D.N.Y. Jan. 30, 2017) ($35.7 million Ukrainian judgment); *Eaglet Corp. v. Banco Cent. De Nicaragua, 839 F. Supp. 232* (S.D.N.Y. 1993) (London High Court judgment)

7

Correspondingly, the fundamental issue before this court is whether (i) the defendants qualify as a "foreign state" within the meaning of the statute and (ii) whether Plaintiff can overcome the sovereign immunity presumption by showing that one of the statutory exceptions to immunity applies.

### *i.* *The Defendants Constitute A Foreign State Within The Meaning Of FSIA.*

At the outset, it is clear that the Federal Government of Nigeria is plainly a foreign state to which the FSIA applies. *See Adler v. Federal Republic of Nigeria, 107 F.3d 720, 723 (9th Cir. 1997).* Plaintiff's complaint concedes that Defendant Federal Government of Nigeria (FGN) is a sovereign foreign state. *See (Compl. ¶ 11) (FGN ......"duly constituted and universally acknowledged central sovereign government of Nigeria").* Likewise the complaint further concedes that the office of AG-FGN is being sued in an official capacity for actions taken in official capacity, see. *Compl. ¶ 12(AG-FGN…is the office of the duly constituted head of the Federal Ministry of Justice of Nigeria. The Attorney General is named in their official capacity*).

"Individuals acting in their official capacities are considered 'agenc[ies] or instrumentalities of a foreign state for acts that are committed in an official capacity." *See. Friedman v. Gov't of Abu Dhabi* (D.D.C. 2020) 464 F. Supp. 3d 52, 60. The Supreme Court has ruled that when a foreign state is the "real party in interest," claims against foreign government officials are claims against the foreign state itself and fall within the FSIA. *See Samantar v. Yousuf*, 560 U.S. 305, 325 (2010).

Plaintiff's underlying action in the U.K. court was to redress his claims against the Federal Government of Nigeria for direct liability for breach of trust and, in the alternative, the enforcement of the Fidelity Guarantee (see. *Compl. ¶ 52).* The "real party in interest" is plainly the foreign state of Nigeria, and the FSIA applies to the official named as defendant.

Correspondingly the Defendants are a foreign state and entitled to presumptive sovereign immunity from suit in the United States under FSIA, unless a specified exception to such immunity applies (28 USC § 1602et seq.).   None of the specified exceptions apply in this case.

### *ii.* *None Of The Exceptions To Immunity From Jurisdiction Is Applicable To The Action.*

"[A]t the threshold of every action in a District Court against a foreign state . . . the court must satisfy itself that one of the exceptions to FSIA applies," *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 483 (1983). There is no exception in the FSIA for enforcement of foreign judgments. S*ee Transatlantic Shiffahrtskontar GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384 (2d Cir. 2000)*. (*Although there is an exception for actions concerning enforcement of certain arbitral awards, 28 U.S.C. § 1605(a)(6), it does not apply to enforcement of foreign court judgments*.)

 FSIA exceptions to immunity found in 28 U.S.C. § 1605(a), as amended are: (1)Waiver, (2) Commercial Acts, (3) Expropriations, (4) Rights in certain kinds of property in the United States, (5) Non-commercial torts, and (6) Enforcement of arbitral agreements and awards.

Plaintiff, having realized that he cannot invoke any of the clauses to overcome the presumption of sovereign immunity against the defendants, resorted to pleading contentions that the very U.K. Judgment that he seeks to enforce in this court, has considered and adversely adjudicated against him. In express contradiction to the findings in the U.K. Judgment that the Fidelity Guarantee did not establish that the Defendants agreed to waive its sovereign immunity, (see. *(¶¶16-19)Exh. 1; Compl. Exh. G;)*, Plaintiff in his verified complaint disingenuously re-asserts that, by the terms of the Fidelity Guarantee the Defendants agreed to waive their sovereign immunity. (*Compl. ¶ 21, 43 (iv))*.   The alleged waiver concocted by the plaintiff to establish an exception to the Defendants FSIA Immunity, is defective on two grounds.

First, while Plaintiffs verified complaint asserts that the Defendants agreed "*to submit to the jurisdiction of the Courts of the United Kingdom for the underlying dispute between the Parties*" (*Compl. ¶ 18),* the complaint is devoid of any assertion substantiating that the Defendants agreed to waive their sovereign immunity in the United States courts.

Second, the findings detailed in the U.K. Judgment holds that the Fidelity Guarantee did not establish that the Defendants agreed to waive its sovereign immunity, (*(¶¶16-19)Exh. 1; Compl. Exh. G;)*, the Plaintiff cannot circumvent the findings from the judgment that frames  the integral part of the Plaintiff's action to recognize the U.K. Judgment.

**B.  Plaintiff's Complaint And The Annexed Integral U.K. Judgment Unequivocally Substantiate The Defendants' Position That Plaintiff's Action Can Not Overcome FSIA Presumption of Immunity.**

**i.**       <u>**Defendant Did Not Agree To Waive Sovereign Immunity In United States Courts.**</u>

Although it is true under 28 U.S.C. § 1605(a)(1) that a foreign state may be deemed to have waived its sovereign immunity by "implication," any implication need arise from "evidence" that a foreign state "inten[ds] to waive sovereign immunity in United States courts." *SI Group Consort Ltd. V. Ukraine, Ivano-Frankivsk State Admin*, 2017 WL 398400, at *2(S.D.N.Y.Jan.30,2017) (quoting *Capital Ventures Int'l v. Argentina*, 552 F.3d 289, 295 (2d Cir. 2009)).

While Plaintiff's verified complaint allege that the Defendants agreed "*to submit to the jurisdiction of the Courts of the United Kingdom for the underlying dispute between the Parties*" (*Compl. ¶ 18),* the complaint fails to substantiate that Defendants "inten[ds] to waive its sovereign immunity in United States courts, as to this matter. *See. Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991) ("implied waiver provision of Section 1605(a)(1) must be narrowly construed" and "unmistakable" and "unambiguous"); *Firebird Global Master Fund II Ltd.*, 915 F. Supp. 2d at 127 (participation in litigation in Japan not a waiver to immunity in a U.S. court)

The Plaintiff claim of waiver must therefore be rejected from the onset.

ii.    ***Plaintiff Is Estopped From Contesting The Factual Findings In The U.K. Court's Judgment and Court Order Attached To The Complaint.***

A party seeking to enforce a foreign judgment, is precluded from seeking to relitigate the findings in the foreign judgment.  The Plaintiff cannot circumvent the adverse rulings within the foreign judgment by pleading contradictory factual allegations previously adjudicated against him by the foreign court.  See. *Scheiner v. Wallace (S.D.N.Y. 1993) 832 F. Supp. 687, 694* ("In finding English and New York courts apply similar notions of collateral estoppel, the Southern District previously held "[a] party is precluded from relitigating matters determined adversely to him in a prior action.") citing. *See. Fairchild, Arabatzis & Smith, Inc. v. Prometco (S.D.N.Y. 1979) 470 F. Supp. 610, 615-616.* (foreign judgment when sued upon in New York normally precludes a retrial upon the merits….)   fur. see. *Asvesta v. Petroutsas* (9th Cir. 2009) 580 F.3d 1000, 1011 (We recognize that *Hilton* cautions that "[t]he merits of [a foreign judgment] should not, in an action brought in this country upon the judgment, be tried afresh."" )

Contrary to the Plaintiff's allegation in his verified complaint, that Defendant FGN by written agreement (Fidelity Guarantee) agreed to waive sovereign immunity,*(Compl. ¶ 21)* the transcript from the U.K. default Judgment attached the Plaintiff's complaint as *Exhibit G,* unequivocally found that based on the text of the alleged agreement (Fidelity Guarantee), Defendant FGN **did not waive its sovereign state immunity** *see ((¶¶16-19). Exh. 1; Compl. Exh. G;)*

(*Insofar as the claim relies on the Fidelity Guarantee,……….. the Guarantee cannot be said to be a* commercial transaction ( id. ¶16); *Therefore, to the extent that the claimant relies on section 2 of the State Immunity Act and a submission to the jurisdiction of the court by prior written agreement, I do not accept that submission* ( id. ¶19))

The subsequent Court order issued by the U.K. court from the findings of the Nov. 9 2018 U.K default Judgment stated in (*Sec. ii and iii*, pg. 2,  *Exh. 2, (Compl. Exh. H)*:

11

"**(ii)***the Defendants had agreed to another manner of service, and that the claim was served in the manner agreed **(iii)***the time for acknowledging service has expired AND UPON the Court deciding that the Defendants were entitled to immunity from suit in relation to the sum claimed in paragraph 46(a) of the Particulars of Claim because of the application of Section 1 of the Act)*. ."

See. (*Sec. ii and iii*, pg. 2 *Exh. 2, (Compl. Exh. H)*

     The substance of the Plaintiff's N.Y. CPLR § 5303 complaint (U.K.  Judgment and corresponding  U.K. court Order issued from the U.K. default Judgment*),* unequivocally found and holds that based on the terms of the Fidelity Guarantee,  the Defendants did not agree to waive sovereign immunity to the Plaintiff's claims and that the Plaintiff's action under the Fidelity Guarantee is barred by sovereign immunity within the U.K. laws.  See. *((¶¶16-19). Exh.1; Compl. Exh. G;)also se*e. (*Sec. ii and iii*, pg. 2 *Exh. 2,(Compl. Exh. H)*

    **iii.**     ***The  Court Can Not Admit The Plaintiff's Factual Allegations That Are Conclusively Contradicted By The Findings, Detailed In The U.K. Judgment That The Plaintiff's Complaint Seeks To Enforce*** .

    Under Rule 12(b)(6), "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact <u>are not admitted</u>. *First Nationwide Bank v. Gelt Funding Corp. (2d Cir. 1994) 27 F.3d 763, 771 citing.  " 2A Moore Lucas, Moore's Federal Practice ¶ 12.08, at 2266-69 (2d ed. 1984)*;  *fur.see.  Fleming v. Lind-Waldock Co.,*<u>922 F.2d 20, 23-24</u> (1st Cir. 1990). (The generous approach to pleadings giving to the Plaintiff under Rule 12 b, is restricted by requiring that each general allegation be supported by a specific factual basis. The pleadings are not sufficient where the plaintiff rests on "subjective characterizations" or unsubstantiated conclusions)[2].

---

[2] *See Nicholson v. The Bank of N.Y. Mellon (S.D.N.Y., Aug. 28, 2023, 22 Civ. 3177 (PGG) (KHP)) [pp. 10] ( the court need not accept as true 'conclusions of law or unwarranted deductions of fact,"' citing.  Whitfield v. O'Connell,9 Civ. 1925 (WHP), 2010 WL 1010060, at \*4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp.,27 F.3d 763, 771 (2d Cir. 1994)), and '"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory*

Plaintiff's complaint to enforce the U.K. Judgment under N.Y. CPLR § 5303,  is explicitly based on the details from the U.K. Judgment and Order from the U.K. Judgment attached to the Plaintiff's complaint as *Exhibit  G and Exhibit H,*  and the Plaintiff's complaint incorporates the express terms of the U.K. Judgment as the substance of his complaint.  The U.K. court Judgment and related findings are integral to the Plaintiff's complaint (pleading) and thus should be properly admitted by the court on this motion to dismiss. see *Chambers v. Time Warner, Inc., 282 F.3d 147, 153-54 & n.4 (2d Cir. 2002)* (concluding that district court considering motion to dismiss breach of contract and other claims did not err in weighing contracts because they were " integral to the Amended Complaint**,** " which was "replete with references to the contracts and requests judicial interpretation of their terms");  *Axiom Inv. Advisors, LLC, v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017)* (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n,* 655 F.3d 136, 141 (2d Cir. 2011)) (holding that, in a breach of contract action, the document on which the complaint is based is "by definition integral to the complaint").

In  *Fleming v. Lind-Waldock Co.,* 922 F.2d 20, 23-24 (1st Cir. 1990) the court stated that:

> "As we have recently stated, both the trial and appellate courts must accept the well-pleaded factual averments of the latest (second amended) complaint as true, and construe these facts in the light most flattering to the [plaintiff's] cause . . . exempt[ing], of course, those "facts" which have since been conclusively contradicted by [plaintiff's] concessions or otherwise, and likewise eschew[ing] any reliance on bald assertions, unsupportable conclusions, and "opprobrious epithets."*Fleming, supra id.* 23

In this case, Plaintiff's allegation that the Defendants agreed to waive sovereign immunity, (*Compl. ¶21*) is conclusively contradicted by the fundamental factual averments (the U.K. court's judgment) annexed to the Plaintiff's complaint as integral basis of the Plaintiff's action to enforce

---

statements, do not suffice,'" even for purposes of a pro se complaint. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal,556 U.S. at 678)).

the U.K. Judgment under N.Y. CPLR § 5303 see. *(¶¶16-19) Exh.1; (Compl. Exh. G);* (see. *Sec. ii and iii,* pg. 2 *Exh. 2, (Compl. Exh. H)).* Correspondingly,  in ruling on the instant motion to dismiss, the court cannot admit as true, the Plaintiff's expressly contradicted factual allegation that the Defendants agreed to waive sovereign immunity.

### iv.     *The Findings From The U.K. Court Judgment Is Integral To The Plaintiff's Complaint,  And Bars Plaintiff's Attempt To Overcome The Defendants FSIA Immunity With Factual Averments, Expressly Contradicted By The U.K. Judgment*

"Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises claim preclusion or .. . statutory waiver and bar as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff s claims  are barred as a matter of law." *Sassower v. Abrams,* 833 F.Supp. 253, 264 n.17 (S.D.N.Y. 1993) (citing, *inter alia, Salahuddin V. Jones,* 992 F.2d 447, 449 (2d Cir. 1993)); see *Conopco, Inc, v. Roll Inf 1,* 231 F.3d 82, 86 (2d Cir. 2000)  also see.  *Nicholson v. The Bank of N.Y. Mellon* (S.D.N.Y., Aug. 28, 2023, 22 Civ. 3177 (PGG) (KHP)) (pp. 11) "It is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion."

As emphasized in *Fairchild, Arabatzis & Smith, Inc. v. Prometco* (S.D.N.Y. 1979) 470 F. Supp. 610, 616-617, (Notwithstanding that the English Judgment was a default judgment, Plaintiff having litigated and lost an issue at the English court, is barred from raising it once again in the American court. *id. 616-617*; citing *Schuylkill Fuel Corp. v. B C Nieberg Realty Corp., Inc.,* 250 N.Y. 304, 306-07.;  New York courts have long given default judgments collateral estoppel effect and considered them conclusive between the parties with regard to all matters essential to sustain the judgment. *Fairchild, Arabatzis & Smith, Inc.,* 470 F. Supp. 610, 616-617 *citing .  119 Rosset Corp. v. Blimpy of New York Corp.,* 65 A.D.2d 683, 409 N.Y.S.2d 735, 736 (1st Dep't 1978) *fur. cit omt.*;

Likewise the findings in the U.K. default Judgment in this case,  holding that based on the terms of the Fidelity Guarantee, the Defendants <u>did not</u> agree to waive sovereign immunity, is an essential part to the U.K. default Judgment and conclusive in this Plaintiff's action to enforce the U.K. default Judgment. The Plaintiff, having litigated and obtained an adverse decision from the U.K. court on the issue of whether the Defendants agreed to waive sovereign immunity, is barred from asserting or using factual legal conclusions already adjudicated against him by the U.K. court, to support this action to enforce the very judgment of the same U.K. court that has adversely adjudicated the factual legal conclusions against the Plaintiff.

**C. _Plaintiff Can Not Assert The Commercial Activity Exception:_**

To overcome the presumption of immunity under the commercial activity exception, Plaintiff must show that "the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). See. _Friedman v. Gov't of Abu Dhabi_ (D.D.C. 2020) 464 F. Supp. 3d 52, 61.

Under the first and second clauses of § 1605(a)(2), the action must be "based upon" an act or activity" _in the United States_." Without facts of such acts, the first two clauses cannot apply. Plaintiff's complaint made no contention that the property allegedly taken from him (or any property exchanged for that property) is "present in the United States," nor did Plaintiff contend that such property is "owned or operated" by an "agency or instrumentality" of a foreign state "engaged in a commercial activity in the United States.

To the contrary, Plaintiff's verified complaint concedes that the instant action has no nexus or direct effect to the United States because the parties framed the transaction in U.K. and agreed for it to be enforced in the jurisdiction of U.K. courts (*Compl. ¶¶ 17-19*). *See Nelson*, 507 U.S. 349, 363 (1993) (reversing judgment of appeals court where action alleged in the case was not "based upon" commercial activity); *Chance v Taiwan*, 1996 U.S. App. LEXIS 11811, at *2 (1st Cir. May 23, 1996) (dismissing case because attempt to invoke the commercial activity exception to the FSIA is unavailing when the action at issue is "based... upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere").

Likewise, Plaintiff cannot base the court's jurisdiction on the third clause of the commercial activity exception, which allows a court to exercise jurisdiction where (1) the action is based upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere, and (2) that act causes a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2).

Plaintiff cannot identify any direct effect in the United States. A "direct effect requires that 'something legally significant actually happened in the United States.'" *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran, 892 F. Supp. 2d 219, 226 (D.D.C. 2012*)

No facts within the plaintiff's complaint indicate that the parties' transaction impliedly or expressly contemplated that the transaction will involve the United States. The courts have consistently rejected arguments like; the parties agreed to enforce the agreement anywhere in the world or that the contract reflects payments in U.S. Dollars, as sufficient basis to establish direct effect and substantial effects in the United States. *See. Friedman v. Gov't of Abu Dhabi* (D.D.C. 2020) 464 F. Supp. 3d 52, 65, ( contractual provision giving a creditor the right to sue for enforcement of the notes anywhere in the world does not suffices to satisfy the "direct effect"

16

requirement.) Provisions in contract specifying that payment will be made in U.S. currency or that

creditor will be paid anywhere in the world, cannot satisfy substantial-contact requirement to meet

FSIA commercial activity exception.   see. *Friedman, 464 F. Supp. 3d 52, 65 id.66; citing.*

*In Goodman Holdings v. Rafidain Bank*, 26 F.3d at 1146–47 (D.C. Cir. 1994), (*letters of credit that*

*did not specify a place of performance did not create direct effect in the United States*);  Zedan v.

Kingdom of Saudi Arabia, 849 F.2d 1511, 1514 (D.C. Cir. 1988); *Peterson v. Royal Kingdom of*

*Saudi Arabia, 416 F.3d 83 (D.C. Cir. 2005)* (pay-wherever-you-are or can collect anywhere

arrangement does not satisfy the  requirement that an effect must have an "immediate consequence"

in the United States, detailed by the Supreme Court in  *Republic of Argentina v. Weltover, Inc., 504*

*U.S. 607, 611*, *112 S.Ct. 2160*, *119 L.Ed.2d 394* (1992)

**D.**    ***The Expropriation Exception Under § 1605(a)(3) Does Not Apply***

Plaintiff cannot establish jurisdiction under the expropriation exception found in §1605(a)(3)

of the FSIA. That exception provides that foreign states are not immune in cases where:

> Rights in property taken in violation of international law are in issue and that
> property or any property exchanged for such property is present in the United States in
> connection with a commercial activity carried on in the United States by the foreign
> state; or that property or any property exchanged for such property is owned or operated
> by an agency or instrumentality of the foreign state and that agency or instrumentality is
> engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3)

The "taking" exception is plainly not applicable here. A plaintiff must establish a valid

claim that 'property' has been 'taken in violation of international law; and (b) one of the exception's

to jurisdictional nexus clauses is satisfied. 28 U.S.C. § 1605(a)(3); see. *Bolivarian Republic of*

*Venez. v. Helmerich & Payne Int'l Drilling Co., 137 S. Ct. 1312, 1318-19 (2017)* also see. *Alperin*

*v.Vatican Bank, 360 Fed. Appx.* 847, 850 (9th Cir. 2009). Plaintiff fails on both scores.

17

First, the Complaint does not raise an issue of property taken in violation of international law. This would require asserting a claim that involves an alleged "taking by the state of the property of a national of another state" that is "not for a public purpose," is "discriminatory," or is "not accompanied by provision for just compensation…." *See Helmerich & Payne, 137 S. Ct. 1312 at 1321*, *citing. Restatement (Third) of Foreign Relations Law § 712(1) (1987)*

Plaintiff's verified Complaint asserts that he is a Nigerian,*(compl.¶30)*, and seeks to enforce a foreign judgment he obtained for damages resulting from the Defendant's seizure of his funds, in a breach of trust.  This is not an expropriation as understood in international law. Restatement (Third) of Foreign Relations Law § 712(1) (1987); *United States v. Belmont, 301 U.S. 324, 332 (1937)* (noting that "[w]hat another country has done in the way of taking over property of its nationals ... is not a matter for judicial consideration here. Such nationals must look to their own government for any redress to which they may be entitled").  also see. *Villoldo v. Castro Ruz*, 113 F. Supp. 3d 435, 438-39 (D. Mass. July7, 2015)(quoting *Republic of Iraq v. First Nat. City Bank*, 353F.2d 47, 51 (2d Cir. 1965)) (United States court is *"forbid[den]" from "examin[ing]. . . 'taking[s] by a foreign sovereign of property within its own territory"* under the *"act of state doctrine"—the "taking exception"*)

Finally, the complaint fails any of the jurisdictional nexus prong, which require that the "property [allegedly taken] or any property exchanged for such property" be "present in the United States in connection with a commercial activity carried on in the United States by the foreign state." *SeeSimon v. Republic of Hungary, 812 F.3d 127, 146-47 (D.C. Cir.2016)*.  fur. *see de Csepel v. Republic of Hung., 859 F.3d 1094, 1107 (2017)* ("claims against foreign states must satisfy the first nexus requirement" of the expropriation exception); *Simon, 812 F.3d at 146*(same).  Plaintiff, however, cannot satisfy this requirement because property being "present in the United States"

18

necessitates its physical presence here. *de Csepel*, 859 F.3d at 1106.  That plainly is not the case with regard to the funds which Plaintiff claims has been wrongfully withheld by the Defendant or the foreign judgment at issue.  Nor could any such property be present in the United States in connection with a commercial activity by Defendant (FGN) in the United States, as the exception also requires. *Simon, 812 F.3d at 148*.  Indeed, Plaintiff identifies no commercial activity of the Defendants in the United States whatsoever.

### E. *The "Tortious Act or Omission" Exception Does Not Apply*

Plaintiff cannot establish jurisdiction by invoking the "tortious act or omission" exception found in § 1605(a)(5) of the FSIA. "The tortious activity exception contained in § 1605(a)(5) applies only when [the] alleged injury and the foreign state's tortious conduct occurred <u>within the United States</u>." *In re Chinese- Manufactured Drywall Products Liability Litigation, 168 F. Supp. 3d 918, 934 (E.D. La. Mar.10, 2016)* (citing *Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439-41 (1989)).*

Even if Plaintiff alleges that the Defendants' seizure of his funds was tortuous, such conduct occurred in Nigeria, not the United States. Accordingly, the tortious-activity exception, 28 U.S.C. § 1605(a)(5), does not apply in this proceeding.

Plaintiff's subjective characterization and unsubstantiated conclusions that he is a victim of crime, because the motive of the transaction was to entrap him "in a factitious criminal activity" *(Compl. ¶¶ 33,34, and 68)* is not tenable to overcome the FSIA tort exception.

The U.K. Judgment findings that the Plaintiffs claim is based on either breach of the Fidelity Guarantee or in alternative liability for seizure of funds from breach of trust, *( ¶13, Exh.1 (Compl. Exh. G)* expressly contradicts the Plaintiff's characterization that the action resulted from criminal activity.   Further the Court is prohibited by statute from looking at the motive behind the

activity—instead, it must look at the <u>nature</u> of the activity. *See 28 U.S.C. § 1603(d)*, <u>Friedman v. Gov't of Abu Dhabi</u> (D.D.C. 2020) 464 F. Supp. 3d 52, 69-70 *citing <u>Cicippio v. Islamic Republic of Iran, 30 F.3d 164, 167 (D.C. Cir. 1994)</u>. (It is to the character and type of activity to which we should look; purpose must be disregarded and a plaintiff cannot, by describing the act in question as intertwined with its purpose, avoid the statutory preclusion).*

> **F.**     <u>*There Is No Diversity Jurisdiction*</u>

Plaintiff cannot save this action by mistakenly asserting that there is diversity jurisdiction. It is black letter law that the FSIA provides the exclusive means for establishing subject-matter jurisdiction over a foreign sovereign. 28 U.S.C. §1330(a); <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993 (citing <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 443 (1989)) (FSIA provides the sole basis for jurisdiction over a foreign state, It is thus immaterial whether there is complete diversity.)  Also see <u>Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez</u>., 863 F.3d*96, 124 (2d Cir. 2017);*

**G.**     <u>*Plaintiff Failed To Comply With the Service Requirements of 28 U.S.C. § 1608(a)*</u>

The complaint should also be dismissed under Federal Rule of Civil Procedure 12(b)(5) because Plaintiff failed to serve Defendants in accordance with § 1608(a) of the FSIA, which provides the "exclusive procedures for service on a foreign state." <u>Transaero, Inc. v. La Fuerza Aerea Boliviana</u>,*30 F.3d 148, 154 (D.C. Cir. 1994)*

Section 1608(a) "delineates the `exclusive procedures' for effecting service of process upon a foreign state," <u>Magness v. Russian Federation</u> (5th Cir. 2001) 247 F.3d 609, 615, citing <u>Alberti v. Empresa Nicaraguense De La Carne</u>,*705 F.2d 250, 253* (the court refused to excuse the plaintiff's service on the Nicaraguan Ambassador in lieu of the head of the foreign affairs ministry) .

The U.K. Judgment annexed to the Plaintiff's complaint in this action, holds that Plaintiff's affidavits and testimony at the default hearing substantiates that there is an existing arrangement for service of process between plaintiff and defendants, and that the parties agreed that service of process will be made to the Defendant through the Nigeria High Commission in London (§1608(a)(1).  *See.  (¶¶21Exh.1, (compl. Exh. G, ¶¶21) )*

Findings within the U.K. court Judgment that frame the substance of Plaintiff's complaint to enforce the U.K. Judgment, cannot be subject to retrial on the merits. *See. Fairchild, Arabatzis & Smith, Inc. v. Prometco (S.D.N.Y. 1979) 470 F. Supp. 610, 615-616.* (foreign judgment when sued upon in New York normally precludes a retrial upon the merits….) citing. *Arabatzis Smith, Inc. v. Prometco (Produce Metals) Co.,*470 F. Supp. 610, 616 (S.D.N.Y. 1979). ( *In finding English and New York courts apply similar notions of collateral estoppel, the Southern District previously held "[a] party is precluded from relitigating matters determined adversely to him in a prior action."*

Pursuant to the agreement that existed between the parties regarding service, the only option available to Plaintiff for effectuating service in this action was the procedure set out in §1608(a)(1) *(by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision).*  Instead of effecting service to the Defendants pursuant to the existing arrangement (through the Nigeria High Commission in London), Plaintiff's affidavit of service claims that the instant action was served to the Defendant (FGN) through  *"sealed in an envelope with postage paid for UPS, signature required and addressed to:" "Amb Adamu Ibrahim Lamwa, Perm Sec."*  and to Defendant (AG-FGN) through " *"sealed in an envelope with postage paid for UPS, signature required and*

*addressed to:" "Perm Sec. Beatrice Jedy-Agba" [3]. See. Affidavit of service filed on July 12, 2023*

*(EXHIBIT 4 (Exh.4)  and EXIBIT 5 (Exh.5))*

Plaintiff`s  claim as detailed in the Plaintiffs affidavit of service is defective, and does not

confer jurisdiction, as it fails to comply with the strict compliance requirements of Sec. 1608(a)1.

see. *Magness v. Russian Federation* (5th Cir. 2001) 247 F.3d 609, 615, holding:

*"We conclude that the provisions for service of process upon a foreign state or political*
*subdivision of a foreign state outlined in section 1608(a) can only be satisfied by strict compliance.*
*The express language of the statute requires that service "shall" be made upon a foreign state in the*
*manner prescribed. Moreover, the committee report on the FSIA states that "section 1608(a) sets*
*forth the exclusive procedures for service on a foreign state." H.R. Rep. No. 94-1487, at 24 (1976),*
*U.S. Code Cong. Admin. News at 6604, 6623 (emphasis added). This language simply does not*
*support a finding that anything less than strict compliance will suffice under the law."*

Since special arrangement for service existed between Plaintiff and Defendants, Plaintiff's

failure to serve in the manner required by the FSIA (Sec. 1608 (a)(1)) mandates dismissal of the

Complaint. *See Magnus Elec., Inc., v. Royal Bank of Canada,* 620 F.Supp. 387, 389 (N.D.Ill.

1985), *aff'd in part, rev'd in part on other grounds,* 830 F.2d 1396 (7th Cir. 1987) (holding that

"noncompliance with the [FSIA]'s literal requirements (though it certainly did provide notice)

deprives this Court of personal jurisdiction.") *also see, e.g., Transaero, Inc. v. LaFuerza Aerea*

*Boliviana*, *30F. 3d 148, 154* (D.C.Cir. 1994) (no personal jurisdiction where service under §1608(a)

was not strictly adhered to); *Gray v. Permanent Mission of People's Republic of Congo to United*

*Nations*, 443 F.Supp .816, 822 (S.D.N.Y. 1978) (case dismissed because actual notice insufficient

to meet requirements of FSIA).

---

Amb Adamu Ibrahim Lamwa, Perm Sec          Perm Sec, Mrs Beatrice Jedy-Agba
Federal Ministry of Foreign Affairs         Attorney General of the Fed. Rep.
Off Ahmadu Bellow Way                        Maitama
Tafewa Belwa House                           Plot 71B, Shehu Shabari Way
Head of the Ministry of Foreign Affairs      Attorney General's Chamber
Abuja Feder                                   Abuja Feder
3      **NIGERIA**                                **NIGERIA**

## II.    THE CLAIMS AGAINST AG-FGN (GOVERNMENTAL OFFICIAL DEFENDANT) SHOULD FURTHER BE DISMISSESD

Plaintiff's complaint against Attorney General of The Federal Republic of Nigeria (AG-FGN) Nigeria governmental official is nonetheless governed by the FSIA because the Nigeria state is the real party in interest. Even if this were not so, the claims against the Governmental Official Defendant must still be dismissed because the Court would lack personal jurisdiction on him and further the Governmental Official Defendant is immune from suit under the common law foreign official immunity.

### A.    *There Is No Personal Jurisdiction Over The Defendant AG-FNG (Governmental Official Defendant)*

To meet the requirements for specific jurisdiction, over nonresident defendants under minimum contacts, a defendant must satisfy the requirements of both New York's long-arm statute and of constitutional due process. *See Barter House, Inc. v. Infinity Spirits, LLC* (S.D.N.Y., Aug. 5, 2019, 17 Civ. 9276 (PAE)) [pp. 36] citing "*State Farm Fire & Cas. Co. v. Swizz Style*, *Inc*., 246 F. Supp. 3d 880, 887 (S.D.N.Y. 2017)"  "To establish personal jurisdiction under § 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Barrett v. Tema Development (1988)*, *Inc*., 251 F. App'x 698, 700 (2d Cir. 2007)

No allegation within Plaintiff's complaint shows that the AG-FGN transacts any business in New York State or that the activities that generated his action arose out of the transaction in New York State. Rather the complaint concedes that all the transactions occurred between United Kingdom (U.K) and Nigeria, and that the parties agreed to submit any dispute to the jurisdiction of U.K. courts. (*Compl* ¶¶*17-19.)*  There is no allegation in the complaint that

establishes any grounds for this court to exert specific jurisdiction over the AG-FGN (Government official).

    **B.**    ***Common Law Foreign Official Immunity Bars The Action Against AG-FGN.***

The claim against AG-FGN (Governmental Official Defendant) must also be dismissed because he is entitled to status-based common law immunity for actions taken during the course of his official duties. *See Samantar v. Yousuf et al. (2010) 560 U.S. 305, 322* (foreign officials may be entitled to common law immunity for acts undertaking in course of their official duties).

This plainly applies to the claims against AG-FGN (Governmental Official Defendant). The Complaint alleged that the office of AG-FNG is been sued in his official capacity in performance of his official duties *see. (Compl. ¶ 12 ( AG-FGN_"is the office of the duly constituted head of the Federal Ministry of Justice of Nigeria. The Attorney General is named in their official capacity"*).

  The complaint explicitly claims that the AG-FGN is being sued in his official capacity and makes no allegation against AG-FGN in his individual capacity. The complaint recognizes that AG-FGN is part of the sovereign state of Nigeria within the definition and context of the statute"). Correspondingly, the AG-FGN is entitled to common law immunity. See *Matar v. Dichter*, 500 F. Supp. 2d 284, 291 (S.D.N.Y. 2007) (granting immunity to Director of Security Services for allegedly planning military operation), aff'd, 563 F.3d 9 (2d Cir 2009));

**III**    **PLAINTIFF'S ACTION SHOULD BE DISMISSED SINCE THE UNITED KINGDOM IS THE APPROPRIATE AND CONVENIENT FORUM, AND THE PARTIES CONTRACTUALLY AGREED TO A FORUM SELECTION CLAUSE.**

Plaintiff's verified complaint establishes the existence of a contractual forum selection clause between the parties, *see. Compl. ¶¶17-19 "the Nigerian Government Defendants agreed in writing to submit to the jurisdiction of the Courts of the United Kingdom for the underlying*

*dispute between the Parties,"* and that all the transactions and resources of the Defendants are located in the United Kingdom.

### i.     <u>*Presumption of Enforceability Of Contractual Forum Selection Clause*</u>:

Typically, when presented with a motion to dismiss for *forum non convenient*, a court must assess: "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Zanghi v. Ritella* (S.D.N.Y., Sep. 24, 2021, 19 Civ. 5830 (NRB)) [pp. 8] citing *Fasano v. Yu*, 921 F.3d 333, 335 (2d Cir. 2019) ("*Fasano I*").

However, where as in the present case, the complaint concedes that the parties contractually agreed to submit their dispute to jurisdiction of the courts in the United Kingdom, there is a presumption of enforceability of the U.K. forum clause, unless the Plaintiff is able to rebut the presumption of enforceability. *See. Zanghi v. Ritella* (S.D.N.Y., Sep. 24, 2021, 19 Civ. 5830 (NRB)) [pp. 9]  citing *Fasano I*, 921 F.3d at 335. "*the forum non conveniens* analysis is *substantially modified when the parties previously agreed to a contractual forum selection clause governing the claims in dispute*"

Under the presumption of enforceability of the forum selection clause, the court  is required to enforce the U.K. forum selection clause unless the Plaintiff is able to meet the burden of substantiating that:  *(""(1) [the forum selection clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.*" See. . *Zanghi v. Ritella* (S.D.N.Y., Sep. 24, 2021, 19 Civ. 5830 (NRB)) (pp. 9) citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84, 392 (2d Cir. 2007).

As detailed below, the U.K. forum is adequate and fair for the Plaintiff's action, and no facts within Plaintiff's complaint rebut the presumption of enforceability of the parties' contractual forum clause.

   ii.   **_U.K. Forum Is Adequate, Fair And Enforcement Does Not Contravene Any Public Policy._**

With respect to the adequacy of the alternative forum, the Supreme Court in _Piper Aircraft Co.v.Reyno_,454 U.S. 235, 254 (1981) emphasized that a forum is adequate unless it offers "no remedy at all" by, for example, not permitting litigation of the subject matter of the dispute. As the _Piper_ court noted, this will be the case only "in rare circumstances." _Id. See also Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1178 (9th Cir. 2006)_ ("This test is easy to pass" as forum will be inadequate only where there is no remedy at all).

In this action, Plaintiff has been allowed to litigate his claims and obtained a judgment in the U.K. court. Plaintiff cannot dispute that the U.K. courts will allow him a day in court and to enforce the U.K. Judgment at issue against the Defendants, nor can Plaintiff dispute that the U.K. legal system dispenses independent and impartial justice.

Courts in the United Kingdom have been found by multiple courts to be an adequate, alternative forum in the _forum non conveniens_ context see. _E.D.N.Y., Aug. 27, 2012, 11-cv-05801 (DLI) (VVP)) [pp. 17]_ England is available for the parties to litigate this dispute, satisfying one of the _forum non conveniens_ factors." _Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C. also see. Anglo Am. Ins. Group, P.L.C. v. Calfed (S.D.N.Y. 1996) 940 F. Supp. 554, 566._

   iii.   **_There Is No Deference To Plaintiff's Choice Of Forum._**

It is well established that "the degree of deference given to a plaintiff's forum choice varies with the circumstances" and that greater deference is given to a plaintiff's decision to sue

in his home forum whereas "[t]he choice of a United States forum by a foreign plaintiff is entitled to less deference." *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 71 *(2d Cir. 2001) ")* citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 236 (1981)).

Here, with respect to home forum considerations, plaintiffs' "choice of this forum deserves little or no deference. Plaintiff is a Nigerian citizen residing in the United Kingdom (U.K), (*Compl.* ¶30 ) and the complaint concedes that in addition to agreeing to submit all disputes to the jurisdiction of U.K. courts, the defendants' offices are in United Kingdom, and the transactions that resulted in the instant action resulted between Nigeria and U.K. (*Compl. ¶17-19).* Plaintiff's complaint shows no connection to the United States to provide a "bona fide reason for the plaintiff to have sued in New York."

New York has no interest in this case given that none of the parties is domiciled in New York. No business related to this case has been shown to have been transacted in New York, and none of the events giving rise to these causes of action occurred in New York. *See Republic of Panama v. BCCI Holdings (Luxembourg), S.A.,* 119 F.3d 935, 952 (11th Cir. 1997) (affirming *forum non conveniens* dismissal where the "vast majority of the fraudulent acts committed in furtherance of this scheme were committed abroad"). The local interest in having localized controversies decided at home and the interest in avoiding the unfair imposition of New York resources on citizens of an unrelated forum weigh heavily against the Southern District of New York as the most convenient forum. *See. Odyssey re (S.D.N.Y. 2000) 85 F. Supp. 2d 282, 306*

In addition, public interest factors decidedly favor this action to be litigated locally in the United Kingdom, the action presents an issue of application of foreign law. As demonstrated in Section IV below, the default judgment that the Plaintiff seeks to enforce in the United States is not considered final and enforceable under the laws of the United Kingdom. The courts have a

27

legitimate interest in avoiding the difficulty associated with questions of conflicts of law and the application of foreign law. *Monagasque de Reassurances, S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488,500-01(2d Cir. 2002).

## IV.   THE U.K. DEFAULT JUDGMENT IS NOT FINAL AND ENFORCEABLE IN UNITED KINGDOM.

Article 53 of the CPLR "applies to any foreign country judgment which is final, conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." N.Y. C.P.L.R. § 5302 (McKinney 2000).  *See.  Dresdner Bank AG v. Haque (S.D.N.Y. 2001) 161 F. Supp. 2d 259, 262.*  "The burden of proof in "establishing the conclusive effect of a foreign judgment is on the party asserting conclusiveness." *Bridgeway Corp. v. Citibank, 45 F. Supp.2d 276, 286 (S.D.N.Y. 1999)"*

As a threshold issue, the U.K. Judgment in this action is not final and enforceable, since the pre-requisite order to enforce the judgment (Final Third Party Debtors Order (TPDO)) has not been issued and cannot be issued until the court hears and makes a ruling on the Defendants' pending application to set aside the default judgment scheduled to be heard by the U.K. court on October 27, 2023 [4].  ( *¶5-7; and ¶13-15 , Decl. of Gromyko Amedu). S*ee. *Overseas Dev. Bank in Liquidation v. Nothmann (N.Y. App. Div. 1985) 115 A.D.2d 719, 720 (English judgments by virtue of their age, were not "final, conclusive and enforceable" under* CPLR 5302*, without a writ of execution upon leave from an English court. ) also see.*  "plaintiff "bears the burden of proving that no mandatory basis for non-recognition pursuant to CPLR § 5304(a) exists" ( *Dresdner Bank AG* v. *Haque*, 161 F Supp 2d 259, 263 [SDNY 2001])."

---

[4] On September 18, 2023, the U.K. court scheduled the hearing on the Defendant's application to set aside the U.K. default judgment for October 27, 2023.  (*See Decl. of Gromyko Amedu's  ¶ 15; also see. Exhibit H.  attached to Decl. of Gromyko Amedu's  ( Correspondence by U.K. court's listing officer Michael Tame confirming U.K, court's scheduled hearing for October 27, 2023*

While "CPLR 5304(a)(1) does not demand that the foreign tribunal's procedures exactly match those of New York, the statute is satisfied if the foreign court's procedures are compatible with the requirements of due process of law" ( *CIBC Mellon Trust Co.* v. *Mora Hotel Corp. N.V.*, 100 NY2d 215, 222, cert den 540 US 948)

The Court has the discretion to stay an action if there is a pending appeal in the foreign country *(CPLR 5306). Attel Fin. S.A. v. Lefebvre* (N.Y. Sup. Ct. 2022) 2022 N.Y. Slip Op. 31394, 6-7.  Plaintiff apparently filed this action in New York in an attempt to forum shop. Plaintiff exhibits desperation to satisfy an ineffective and unenforceable U.K. Judgment before a potential adverse ruling from the U.K. court on the Defendants' application to set aside the U.K. default Judgment.   It would be fundamentally unfair to proceed with the enforcement of the U.K. Judgment which the viability or enforcement has been stalled pending further adjudication in the U.K. court.

**Conclusion**

For the reasons set forth herein, Plaintiff's Complaint should be dismissed in its entirety or in the alternative this action should be stayed pending a determination on the pending Defendants application to set aside the U.K. Judgment.

Dated:  September 19, 2023                                  Respectfully submitted,

*/s/ Gerald O.  Egbase*
Gerald O. Egbase
(*Pro Hac Vice* Admission Pending)
**AOE Law & Associates**
800 W. 1st Street, Suite 400
Los Angeles, California 90012
Tel:(213)620-7070
Fax(818)450-1456
Email:ge-aoe@baselaw.net
   *Attorneys for the Defendants*

29

**<u>Certificate of Service</u>**

I hereby certify that on September 19, 2023, **DEFENDANTS FEDERAL GOVERNMENT OF NIGERIA AND ATTORNEY GENERAL OF THE FEDERAL GOVERNMENT OF NIGERIA'S MOTION TO DISMISS**, was electronically filed and served with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record, I further emailed  courtesy copies of the same pleadings to counsels:

Baruch S. Gottesman, Esq. ;   e-mail: bg@gottesmanlegal.com
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
bg@gottesmanlegal.com
Phone: (212) 401-6910
<u>Attorney for  the Plaintiff</u>


Fred G. Wexler, Esq. ;          e-mail; fgw@browngavalas.com
David H. Fromm, Esq.;          e-mail; dfromm@browngavalas.com
Robert J. Brown;
BROWN GAVALAS & FROMM LLP
60 East 42nd Street, Suite 4600
New York, New York 10165
Phone: (212)-983-8500
<u>Attorneys for Defendants, Central Bank of Nigeria</u>


Steven B. Feigenbaum (519592)
KATSKY KORINS LLP
605 Third Avenue
New York, New York 10158
(212) 953-6000
sfeigenbaum@katskykorins.com
<u>Attorneys for Defendant JPMorgan Chase Bank, N.A.</u>

/s/*Gerald O. Egbase*
Gerald O. Egbase
