

Case No: CL-2016-000151

IN THE HIGH COURT OF JUSTICE
BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES
COMMERCIAL COURT (QBD)

The Rolls Building
Rolls Buildings
Fetter Lane
London EC4A 1NL

Date: Friday, 9th November 2018

Page Count: 7
Word Count: 3063
Number of Folios: 43

Before:

THE HONOURABLE MRS JUSTICE MOULDER

- - - - - - - - - - - - - - - - - - - -

Between:

LOUIS EMOVBIRA WILLIAMS

**Claimant**

- and -

(1) FEDERAL GOVERNMENT OF NIGERIA
(2) ATTORNEY GENERAL OF THE FEDERAL GOVERNMENT OF NIGERIA

**Defendants**

- - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - -

MR NICHOLAS GOODFELLOW for the **Claimant**

- - - - - - - - - - - - - - - - - - - -

# APPRROVED JUDGMENT

- - - - - - - - - - - - - - - - - - - -

*If this Transcript is to be reported or published, there is a requirement to ensure that no reporting restriction will be breached. This is particularly important in relation to any case involving a sexual offence, where the victim is guaranteed lifetime anonymity (Sexual Offences (Amendment) Act 1992), or where an order has been made in relation to a young person.*

*This Transcript is Crown Copyright.  It may not be reproduced in whole or in part other than in accordance with relevant licence or with the express consent of the Authority.  All rights are reserved.*

Digital Transcription by Marten Walsh Cherer Ltd.,
2nd Floor, Quality House, 6-9 Quality Court, Chancery Lane, London WC2A 1HP.
Telephone No: 020 7067 2900. DX 410 LDE
Email: info@martenwalshcherer.com Web: www.martenwalshcherer.com

**MRS JUSTICE MOULDER:**

1. This is the claimant's application dated 24th January 2018 for judgment in default of acknowledgment of service being filed. The original application for it to be dealt with without a hearing was refused by order of Robin Knowles J on 26th February 2018. A hearing was therefore fixed. Robin Knowles J ordered that the application be served on the defendant. However, no appearance has been made before me today on behalf of the defendant.

2. In support of the application I have two affidavits from the claimant: one dated 22nd January 2018 and the other dated 5th November 2018.

3. The first question which I have to address is whether I should proceed in the absence of the respondent. I have been shown letters which were sent by a firm Westbrook Law to the Nigerian High Commission. There are a number of letters which have been sent referring to the application and the listing of the application, and no apparent response was received apart from one email which it appears was received by Westbrook Law. From the evidence of those letters I conclude that the defendant is aware of these proceedings, but nevertheless has decided not to attend. In those circumstances, I am therefore prepared to proceed with the application.

4. The next question which I have to address is that, as I indicated to counsel, it seems to me that the provisions of CPR 15.11 apply and the proceedings in this case have automatically been stayed. The claim form was issued on 8th March 2016. Service is said to have been effected on 18th March 2016, and an acknowledgement of service was due 14 days thereafter. I am informed by counsel that no steps were then taken in the proceedings until the application dated 24th January 2018 which is now before the court.

5. In those circumstances, it therefore seems to me that the provisions of CPR 15.11 have operated to impose an automatic stay on the proceedings. I have agreed to accept an oral application in the face of the court for such stay to be lifted. I have regard to the notes in the White Book at 15.11.1: in *Football Association Premier League v O'Donovan [2017] EWHC 152 (Ch)* Master Marsh expressed the view that the rule does not place a heavy burden on the applicant to discharge before the court will agree to the stay being lifted. The applicant would have to give an adequate explanation of the delay and show that his case has real as opposed to only fanciful prospects of success. If the application is opposed, the court would have to weigh the competing interests of the parties in the balance.

6. There are therefore two limbs to be considered. Firstly, the explanation of the delay in this case; and, secondly, whether the claimant can show that it has a real prospect of success.

7. As to the explanation of delay, I was referred to the claimant's affidavit and paragraph 9. This indicates that there were attempts between the claimant and the defendant to resolve the matter through a meeting in July 2016. The claimant states that he lost patience with the discussions by November 2017 and then wrote to the defendant on 3rd January 2018 stating his intention to proceed with the application. The application was then issued on 22nd January (stamped on 24th January) 2018. It was submitted for

the claimant that although no formal stay was in place, the reason for the delay was that the parties were seeking to reach agreement.

8. It seems to me in the circumstances that, firstly, the parties were apparently trying to reach an amicable settlement; and, secondly, that notice was given to the defendant when the claimant decided to pursue the proceedings means that there has been no prejudice to the defendant by the delay. Conversely, not to lift the stay would of course not allow the claimant to proceed with the action.

9. As to whether or not there is a real prospect of success, it was submitted by counsel for the claimant that if the court is satisfied that this is a case in which the claimant is entitled to default judgment, then that test is met. If that is wrong, then counsel submitted that it is clear that there is a real prospect of success both on the claim insofar as it relates to the trust which is alleged to have arisen in 1986 and by virtue of the claim under what is termed the Fidelity Guarantee (an order of the President of Nigeria) issued on 29th September 1993.

10. It seems to me that the test is a modest one, and for the purposes of the issue of the stay I accept that the test has been met. I therefore proceed on the basis that the stay has been lifted, and I turn to the issue of the default judgment.

11. The relevant rules are helpfully set out in counsel's skeleton at paragraph 19. The relevant rules are CPR12.3 and 12.11 as well as paragraphs 4.4 and 4.5 of PD12. CPR 12.3 provides that:

> "(1) The claimant may obtain judgment in default of an acknowledgment of service only if…the defendant has not filed an acknowledgment of service or a defence to the claim…and the relevant time for doing so has expired."

Where an application is made against the State (as is the case here) if the court directs that a copy of the application notice be served on the State the procedure is the same as for serving a claim form, except where an alternative method of service has been agreed under section 12(6) of the State Immunity Act 1978 (the "Act"). In this case it is the claimant's case that an alternative method of service was agreed.

12. On an application against the State the evidence must be served by an affidavit and

(a) establish the facts proving that the State is excepted from the immunity conferred by section 1 of the Act,

(b) where the State has agreed to another form of service establish that the claim was served in the manner agreed, and

(c) establish that the time for acknowledging service has expired.

13. The claim in this case is set out at paragraph 46 of the Particulars of Claim. In essence, the claimant seeks an order against the defendant that it should make payment pursuant to obligations under the Fidelity Guarantee and, in the alternative, the claimant brings a claim against the defendant that it is liable to account as a trustee for what it terms a dishonest breach of a 1986 trust. That is in relation to monies

FILED: NEW YORK COUNTY CLERK 06/26/2023 02:20 AM
NYSCEF DOC. NO. 9
INDEX NO. 653037/2023
RECEIVED NYSCEF: 06/26/2023

Case 1:23-cv-07356-LJL   Document 17-10   Filed 09/19/23   Page 4 of 7

**Mrs Justice Moulder**
**Approved Judgment**

Williams v Federal Government of Nigeria & Anor
09/11/2018

which were received by a solicitor, Mr Gale, and which the claimant says were then misappropriated.

14. Dealing with the issue of state immunity, there are two bases on which the defendant might assert immunity in this case. Section 2 of the State Immunity Act states that:

"(1) A State is not immune as respects proceedings in respect of which it has submitted to the jurisdiction of the courts of the United Kingdom.

(2) A State may submit after the dispute giving rise to the proceedings has arisen or by a prior written agreement; but a provision in any agreement that it is to be governed by the law of the United Kingdom is not to be regarded as a submission."

Section 3(1) of the Act provides that:

"(1) A State is not immune as respects proceedings relating to—

(a) a commercial transaction entered into by the State; or

(b) an obligation of the State which by virtue of a contract (whether a commercial transaction or not) falls to be performed wholly or partly in the United Kingdom."

Section 3(3) defines "commercial transaction" as

"...any other transaction or activity (whether of a commercial, industrial, financial, professional or other similar character) into which a State enters or in which it engages <u>otherwise than in the exercise of sovereign authority</u>." [emphasis added]

15. Dealing first with section 3, as this is the primary basis which was advanced for the claimant, it is submitted for the claimant that the underlying fraud which is alleged in this case cannot be said to be an activity in the exercise of sovereign authority. I was referred to the authority of *Kuwait Airways Corp v Iraqi Airways Co (No.1)* [1995] 1 WLR 1147, in particular at 1160, whether the act has the character of a governmental act as opposed to an act which a citizen can perform. It seems to me on the evidence that is before me that the case, insofar as it relies on the dishonest breach of the 1986 trust, falls within the definition of a commercial transaction entered into by the State, given the broad meaning that has been attributed in the authorities to section 3 and the definition in subsection (3).

16. Insofar as the claim relies on the Fidelity Guarantee, it seems to me, as indicated to counsel in the course of submissions, that the Guarantee cannot be said to be a commercial transaction. On the evidence of the claimant the Fidelity Guarantee is said to be a law or statute, and thus it seems to me must be an exercise of sovereign authority. However, counsel for the claimant relies on section 2(2) of the 1978 Act that there may be a submission by prior written agreement. Counsel referred me to *Dicey, Morris and Collins* on *The Conflicts of Laws, 15th Edition (2012)* at 3-50 that it is not a requirement that the party is party to the written agreement; it can be established, for example, through an international agreement. Whilst clearly the Fidelity Guarantee is not in the nature of an international treaty, nevertheless it would appear that, in effect, it is an agreement between the defendant and the claimant.

FILED: NEW YORK COUNTY CLERK 06/26/2023 02:20 AM                                INDEX NO. 653037/2023
NYSCEF DOC. NO. 9    Case 1:23-cv-07356-LJL   Document 17-10   Filed 09/19/23   Page 5 of 7  RECEIVED NYSCEF: 06/26/2023

Mrs Justice Moulder                                         Williams v Federal Government of Nigeria & Anor
Approved Judgment                                                                              09/11/2018

17. The claimant relies on paragraph 21(iii) in particular of the Fidelity Guarantee for the proposition that this amounts to a prior agreement. That states:

> "Neither the Nigerian State nor the Central Bank of Nigeria shall raise or invoke any defences so as to deprive Dr Williams of his money in paragraph 14 above, or make it financially onerous and burdensome such as requiring Dr Williams to deposit security for costs, or suffer from CBN's objections or pleadings such as effluxion of time, acts of State, State privileges, State secrecy and State immunities and the like. All these defences and the like shall be deemed to have been waived without any equivocation and doubt whatsoever."

18. Section 21 cross refers to paragraph 14 of the Fidelity Guarantee. That states (so far as material):

> "The Central Bank of Nigeria is therefore ordered and herein has consented to act with utmost good faith and assurance, and to return to Dr Williams the following sums of money."

It was submitted for the claimant that section 21 of the Fidelity Guarantee is broad enough by its words "Neither the Nigerian State nor the Central Bank of Nigeria" to encompass an agreement not only between the claimant and the Central Bank, but also the agreement of the Nigerian State and the claimant. Whilst it seems to me that the language has some ambiguity, on balance I am not persuaded that section 21 amounts to a prior agreement between the State and the claimant. It seems to me that subsection (iii) has to be read by reference to the lead-in in section 21, which states that it is an agreement of the Central Bank. Further, it cross refers to paragraph 14 which (as referred to above) is an order which is directed to the Central Bank of Nigeria. Thirdly, within the language of subsection (iii) itself it refers to objections from the Central Bank such as effluxion of time, acts of State and State immunity.

19. Therefore, to the extent that the claimant relies on section 2 of the State Immunity Act and a submission to the jurisdiction of the court by prior written agreement, I do not accept that submission.

20. Nevertheless, the claimant's claim is in the alternative, and to the extent that there is immunity by virtue of section 3(1) in relation to the underlying fraud claim, that is sufficient for the claimant to satisfy that test.

21. The court then needs to be satisfied that proceedings have been duly served in accordance with section 12 of the Act. The claimant relies on section 12(6) which provides for service of proceedings in any manner to which the State has agreed. The evidence of the claimant, as set out in his affidavit, is that his lawyer in Nigeria had a conversation with the Solicitor General in Nigeria in February 2016, and according to the evidence of the claimant in that conversation the Solicitor General agreed to service of the proceedings by service on the High Commission in London. The claimant also relies on a further discussion, a telephone conversation which according to the evidence of the claimant set out in his affidavit of 5th November 2018 he had with the High Commissioner and the Ambassador at the Nigerian High Commission, and the evidence of the claimant is that he was told that the High Commission was instructed to accept

21. service, and the application was served accordingly. The claimant has therefore on the evidence satisfied the requirement in section 12(6) of the Act that the State has agreed to a particular manner of service, and transmission of the proceedings via the Foreign Commonwealth Office is not therefore required.

22. Turning then to evidence of proof of service, I was referred to the affidavit of the claimant at paragraph 8 and to the certificate of service which is in the bundle. The certificate of service is signed by the claimant and states that service was effected on 18th March 2016.

23. In conclusion, therefore, it seems to me that the claimant has satisfied the requirements, and on the evidence before me is entitled to default judgment. The sterling amount which is claimed in the sum of £9,444,460.40 is based on a US dollar amount which I understand was converted at the rate prevailing yesterday. The claimant also seeks interest pursuant to section 35A of the Senior Courts Act for the period from 1st June 1986 to 8th November 2018. The claimant seeks interest at the rate of 8%. It was submitted for the claimant that this is a rate which reflects the varying rates of interest over the lengthy period of time which has elapsed, although counsel acknowledged that in recent years interest rates have of course been considerably lower.

24. The power of the court to award interest pursuant to section 35A gives the court a discretion as to the rate of interest. The rate of interest should reflect a commercial rate and is intended to compensate the claimant for having been out of his money for the relevant period since the cause of action accrued. There is no evidence before me as to what the claimant could have earned if the money had been invested in the interim; nor is there any evidence as to the precise interest rates which have prevailed over the period from 1986 to the current day. The approach of the court must therefore of necessity be broad brush, and in the circumstances therefore the rate of interest which I award is a rate of 4%.

MR GOODFELLOW: Madam, I should draw to your attention that in light of your findings the claim does not succeed on the basis of the Fidelity Guarantee. The appropriate dollar sum in relation to the 1986 Trust claim as set out in paragraph 46(b) of the particulars of claim is $6,520,190.

MRS JUSTICE MOULDER: Thank you very much. I am sorry, I had not looked at the precise figures. Could you just give me that figure again.

MR GOODFELLOW: It is $6,520,190. I would need to do the appropriate calculation based on the rate that is in my skeleton argument.

MRS JUSTICE MOULDER: I can leave you to do that, I think.

MR GOODFELLOW: Yes, my Lady.

MRS JUSTICE MOULDER: Thank you very much, and obviously if you could then calculate the interest that would be helpful.

-------------------------

**This Judgment has been approved by Moulder J.**

FILED: NEW YORK COUNTY CLERK 06/26/2023 02:20 AM
NYSCEF DOC. NO. 9

INDEX NO. 653037/2023
RECEIVED NYSCEF: 06/26/2023

Case 1:23-cv-07356-LJL  Document 17-10  Filed 09/19/23  Page 7 of 7

**Mrs Justice Moulder**
**Approved Judgment**

Williams v Federal Government of Nigeria & Anor
09/11/2018

Digital Transcription by Marten Walsh Cherer Ltd.,
2nd Floor, Quality House, 6-9 Quality Court, Chancery Lane, London WC2A 1HP.
Telephone No: 020 7067 2900. DX 410 LDE
Email: info@martenwalshcherer.com
Web: www.martenwalshcherer.com