**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**DR. LOUIS EMOVBIRA WILLIAMS,**

Plaintiff,

*~ versus ~*

**FEDERAL GOVERNMENT OF NIGERIA;**
**ATTORNEY GENERAL OF THE FEDERAL**
**GOVERNMENT OF NIGERIA;**
**CENTRAL BANK OF NIGERIA**;
**JPMORGAN CHASE & CO.**; *and*
**JOHN DOES 1 - 10**,

Defendants.

Index No. __1:23-cv-7356__

---

**PLAINTIFF'S MEMORANDUM OF LAW**
*In Opposition to*
**DEFENDANTS' MOTION TO DISMISS**

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Plaintiff*

i

A    **Table of Contents**

.    **Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

C.    **Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D.    **Factual and Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    The "Special Arrangement for Service" . . . . . . . . . . . . . . . . . . . . . . . 2

    2.    The Factitious "Application to Set Aside Judgment" . . . . . . . . . . . . . 3

E.    **Legal Argument**: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    Defendants were Served . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    This Court has Jurisdiction Over Movants . . . . . . . . . . . . . . . . . 7

        a.    Defendants Waived Immunity . . . . . . . . . . . . . . . . . . 7

        b.    Defendants are Otherwise
           Not Able to Claim Immunity . . . . . . . . . . . . . . . . . . 12

    II.    This Court Can Domesticize the Judgment . . . . . . . . . . . . . . . . . 14

        a.    The Judgment is Final . . . . . . . . . . . . . . . . . . . . . . . 14

        b.    New York is Most Convenient . . . . . . . . . . . . . . . . . 14

F.    **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## B.    Table of Authorities

<u>**Cases:**</u>

*Adetoro v. King Abdullah Academy, et al.*,
    Case No. 19-cv-1918, 2019 U.S. Dist. LEXIS 127215
    (D.D.C. July 30, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*De Sousa v. Embassy of Angola*,
    229 F. Supp. 3d 23 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*,
    470 F. Supp. 610 (S.D.N.Y. 1979), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Hilaturas Miel, S.L. v. Republic of Iraq*,
    573 F.Supp.2d 781 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jeffereies & Co., Inc. v. Infinity Equities I, LLC*,
    887 N.Y.S.2d 81 (1st Dep't 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

*Lewis & Kennedy, Inc. v. Permanent Mission of the Republic of Botswana to the UN*,
    Case No. 05-cv-2591, 2005 U.S. Dist. LEXIS 13756
    (S.D.N.Y. July 12, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd.*,
    689 F. Supp. 1340 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Okolo v. Cross River State Government*,
    Case No. 18-cv-9479, 2019 U.S. Dist. LEXIS 233190
    (S.D.N.Y. May 31, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Okolo v. Cross River State Government*,
    Case No. 19-cv-5329, 2022 U.S. Dist. LEXIS 208275
    (S.D.N.Y. Nov. 16, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Okolo v. Cross River State Government*,
    Case No. 19-cv-5329, 2022 U.S. Dist. LEXIS 218985
    (S.D.N.Y. Dec. 5, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Republic of Sudan v. Harrison*,
    139 S.Ct. 1048 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*,
    250 N.Y. 304 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala,*
    989 F.2d 572 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Servaas v. Republic of Iraq,*
    686 F.Supp.2d 346 (S.D.N.Y. Feb. 19, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11-12, 13

*Verlinden B.V. v. Cent. Bank of Nigeria,*
    488 F. Supp. 1284 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Williams v. Federal Government of Nigeria, et ano.,*
    CL-2016-00151 (High Ct. of Justice Nov. 9, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Williams v. Nigeria,*
    CL-2016-000151 (High Court Sept. 28, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Statutes**

Article 53 of the CPLR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.K. State Immunity Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Foreign Sovereign Immunities Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other Authority**

Johnson Obera,
THE GOVERNANCE AND ACCOUNTABILITY IN NIGERIAN PARASTATALS
(Univ. of Dundee 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Convention of 15 November 1965 on the
Service Abroad of Judicial and Extrajudicial Documents
in Civil or Commercial Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-5

### C.    Introduction

This action seeks to enforce a final foreign country judgment against the Federal Republic of Nigeria and its parastatal[1] entities.  Enforcement under Article 53 of the CPLR is a straightforward process where this Honorable Court – without inquiry into the merits of the underlying dispute – administratively converts the foreign judgment into a local judgment.

Here, Mrs Justice Moulder (Dame Jane Clare Moulder) a High Court Judge of the Queen's Bench Commercial Court sitting at London issued a Judgment against the Federal Government of Nigeria and its Attorney General on November 9, 2018 in the amount of about fifteen million U.S. dollars, which – with interest – comes to $21,231,960.74 and £ 19,763.13. Plaintiff now seeks an Order domesticating Dame Moulder's judgment.

The Government and its Attorney General  ("movants" or "Defendants") moved to Dismiss (ECF 21, *et seq.*) with a confetti of arguments of why this action should not move forward. We respond to each category of arguments made in the Memo in Support (ECF 22) as follows:

Movants make two jurisdiction arguments: (i.) they were not served (Memo in Support (at pp. 20-23)); and (ii.) there is no jurisdiction over them (Memo in Support at pp. 7-20)). We will show that the service requirements on foreign sovereigns were meticulously complied

---

[1]    "Parastatal" is a term of art in West African governance used to refer to "state enterprises, corporations, boards, agencies or institutions established by Act of Parliament as autonomous or semi-autonomous entities with their own governing bodies to perform specific roles." Johnson Obera, THE GOVERNANCE AND ACCOUNTABILITY IN NIGERIAN PARASTATALS at pp. 71-72 (Univ. of Dundee 2015) available online at https://discovery.dundee.ac.uk /ws/portalfiles/portal/8123732/Governance_and_Accountability_Issues_in_Nigerian_Parastatals_Jojobera_13_0 7_15_1_.pdf.

In a New York context, we would refer to these parastatals including the Attorney General of the Federal Republic of Nigeria and Central Bank of Nigeria as "Agencies".  This is true both in the *administrative law* sense of being government agencies organized for a particular role; and in the *agency law* sense of being alter-egos, agents, and liable for each other's acts, *See Servaas v. Republic of Iraq*, 686 F.Supp.2d 346 (S.D.N.Y. Feb. 19, 2010) recognizing judgment against Agency of a foreign Government against the State itself because "under New York law the [foreign] Judgment can be recognized against [the Government itself] 'by ordinary principles of contract and agency." *Servaas*, 686 F.Supp.2d 359-60 *citing Jefferies & Co., Inc. v. Infinity Equities I, LLC*, 887 N.Y.S.2d 81, 82 (1st Dep't 2009).

with and that there is jurisdiction over Defendants. Movant makes two procedural arguments: (i.) the Judgment is not final (Memo in Support at pp. 28-29); and (ii.) New York is an inconvenient forum (Memo in Support at pp. 24-28). We respond to those as well.

We remain ready to supplement this argument at any hearing or if further briefing is requested by the Honorable Court.

### D.    Factual and Procedural Background

We respectfully incorporate the allegations in the Complaint in full. To respond to issues raised by the Movants, we will highlight the following key factual issues:

### 1.    The "Special Arrangement for Service"

Defendants refer, Memo in Support at pp. 4, 20-21, to a "special arrangement for service between the plaintiff and the foreign state or political subdivision" which they claim would trigger 28 U.S.C. § 1608(a)(1). This recalls the Transcript of the hearing on the entry of Judgment where Dame Moulder was satisfied that Nigeria and its Attorney General were served because:

> "[Williams'] lawyer in Nigeria had a conversation with the Solicitor General in Nigeria in February 2016, and according to the evidence of the claimant in that conversation the Solicitor General agreed to service of the proceedings by service on the High Commission in London."

> "[Williams] also relies on a further discussion, a telephone conversation which according to the evidence of the claimant set out in his affidavit of 5th November 2018 he had with the High Commissioner and the Ambassador at the Nigerian High Commission, and the evidence of the claimant is that he was told that the High Commission was instructed to accept service, and the application was served accordingly."

Approved Judgment of Mrs Justice Moulder in *Williams v. Federal Government of Nigeria, et ano.*, CL-2016-00151 (High Ct. of Justice Nov. 9, 2018)(ECF 23-1) at ¶ 21. In this Memo, we refer to this as the "Judgment".

We will highlight that the claimant and Dame Moulder make *no claim* that the Parties had a global agreement that any service of process in any lawsuit anywhere in the world must be delivered to the High Commissioner of Nigeria at London.  The narrow discussion in the UK case is about how the Nigerian Solicitor General agreed to service "of *the* proceedings" – of *this* specific High Court action after it was initiated – through direct service to the High Commissioner in London.  The allegations further describe how the "High Commission was instructed to accept service" with respect to the specific case after it was filed.

None of that is relevant here where the parties made no agreement related to service.

## 2.    The Factitious "Application to Set Aside Judgment"

Defendants noted that they filed papers with the Court in London seeking to set aside the 2018 judgment, *See* Memo in Support at p. 28, n. 4.  I am pleased to report that this matter is set to be heard on December 15, 2023, and I am informed that no Stay on the enforcement of the Judgment is in place.

## E.    <u>Legal Argument</u>

### I.    <u>Defendants were Served</u>

Under 28 U.S.C. § 1608(a) a Plaintiff may effect service on a foreign sovereign by:

(i.)    Delivery by Special Arrangement for Service, 1608(a)(1);

(ii.)    Delivery through an applicable international convention, 1608(a)(2);

(iii.)    Sending of summons and complaint and notice of suit, together with a translation of each into the official language of the foreign state, by any form of mailing requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, 1608(a)(3); *and*

(iv.)    Through the assistance of the U.S. Secretary of State, 1608(a)(4).

Service pursuant to 28 U.S.C. § 1608(a)(1) is not possible because no special arrangement for service was made between the Plaintiff and the Federal Government of Nigeria. While the Parties agreed (for the narrow purposes of the 2018 UK action) that Defendants would accept service through the High Commission, that was limited to the specific circumstances of that action. In that case, the Solicitor General of Nigeria agreed "for the proceedings" – for the specific circumstances of that case – to accept service.

Further, the Defendants' argument that they agreed to only accept service through the High Commission in London is an attempt to eat their cake and eat it too. Because at the same time they argue that service *must be made* on the High Commission, they argued in London that service *cannot be made* on the High Commission. Movants argued in London that "no service of the claim form with the particulars of claim [was made] on the Defendants in compliance with section 12(1) State Immunity Act, 1978" Application Notice to Set Aside Judgment, Williams v. Nigeria, CL-2016-000151 (High Court Sept. 28, 2020) at ¶ 1 (ECF 24-2). § 12(1) requires the claimant to effect service on a foreign sovereign by service on the UK Ministry of Foreign Affairs.

Therefore, we must move down the chart of service options on foreign governments.

Service pursuant to 28 U.S.C. § 1608(a)(2) is not possible because the Federal Government of Nigeria is not a party to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). The Status Table maintained by the Hague Conference on Private International Law (the intergovernmental organization that administers the Hague Convention) available online at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last checked November 21, 2023) shows that the Federal Government of Nigeria is not a party to the Hague Convention.

In addition, Courts in New York have confirmed in recent decisions that Nigeria is not a party to the Hague Convention and that service on its agencies or instrumentalities is not possible under 28 U.S.C. § 1608(a)(2), *See Okolo v. Cross River State Government*, Case No. 18-cv-9479, 2019 U.S. Dist. LEXIS 233190, *2 (S.D.N.Y. May 31, 2019)(Siebel, Distirct Judge Cathy) *accord Okolo v. Cross River State Government*, Case No. 19-cv-5329, 2022 U.S. Dist. LEXIS 208275, *9 (S.D.N.Y. Nov. 16, 2022)(Report and Recommendation)(Krause, Magistrate Judge Andrew E.) *adopted* 2022 U.S. Dist. LEXIS 218985 (S.D.N.Y. Dec. 5, 2022)(Briccetti, District Judge Vincent L.).

The next option is to effect Service through the Clerk pursuant to 28 U.S.C. § 1608(a)(3).   We would note though that the menu of options for service under 28 U.S.C. § 1608(a) are presented as options in the alternative, and are described as "or" although many courts interpret them as being in order of precedence.  But in any event, § 1608(a)(3) was complied with here.

The requirements of 28 U.S.C. § 1608(a)(3) are not taken lightly.  Justice Alito for an 8-1 court in *Republic of Sudan v. Harrison*, 139 S.Ct. 1048 (2019) explained that while:

> "enforcing compliance with § 1608(a)(3) may seem like an empty formality in this particular case . . . . there are circumstances in which the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction.  The service rules set out in § 1608(a)(3), which apply to a category of cases with sensitive diplomatic implications, clearly fall into this category."

> *Republic of Sudan*, 139 S.Ct. at 1062.

> Plaintiff effected Service in meticulous compliance with § 1608(a)(3)'s dictates.

Courts found service to be improper if not dispatched by the Clerk of the Court, *See, e.g.*, *Adetoro v. King Abdullah Academy, et al.*, Case No. 19-cv-1918, 2019 U.S. Dist. LEXIS 127215, *6 (D.D.C. July 30, 2019)(McFadden, District Judge Trevor N.)(Service improper because Plaintiff "themselves mailed the documents rather than the clerk of the court"); *Lewis & Kennedy, Inc. v. Permanent Mission of the Republic of Botswana to the UN*, Case No. 05-cv-2591, 2005 U.S. Dist. LEXIS 13756, *15 (S.D.N.Y. July 12, 2005)(Baer, Jr., District Judge Harold)(Third attempt at service "fail[ed] to comply with § 1608(a)(3) in that it was not (1) dispatched by the clerk of the court . . . .").

In this case, the Service was dispatched by the Clerk of the Supreme Court of the State of New York in and for the County of New York to the Federal Government of Nigeria, *See* Affidavit in Support at Exhibit A, as docketed at NYSCEF Doc. No. 15 (July 12, 2023); and to the Attorney General, *See* Affidavit in Support at Exhibit B as docketed at NYSCEF Doc. No. 16 (July 12, 2023) together with the Notice of Suit, Summons, Notice of Electronic Filing, Original Verified Complaint and all Exhibits.  Courts have found that delivery by international couriers satisfies the "mail" requirement under § 1608(a)(3), *See, e.g.*, *De Sousa v. Embassy of Angola*, 229 F. Supp. 3d 23, 28 (D.D.C. 2017)(finding Fedex delivery sufficient under § 1608(a)(3)).  Both of the deliveries at issue here were timely received and signed for, *See* Aff. in Support at Exhibit C which contains the receipt and signature for each of the deliveries.

For these reasons, Service was effective on Nigeria and its Attorney General.  We would also respectfully submit that if this Court were to conclude that there was an agreement in place for alternative service on the High Commission in London and that the § 1608(a)(3) service was ineffective, that this case be Stayed and the Plaintiff provided 90 days to perfect service.

## II.     This Court has Jurisdiction Over Movants

### a.  Defendants Waived Immunity

Movants agreed in writing as follows:

"(18) In the unlikely event of any proceedings to recover the proceeds of money in (14) above both the CBN and the Nigerian State recognize that the monies were monies obtained by the CBN by fraud, deception and racketeering influenced scheme of premeditated felony.  Accordingly in any proceedings in any jurisdiction to enforce any judgement obtained in relation thereto both the CBN and the Nigerian State shall refrain from raising any objection on the grounds that Dr Williams is precluded from levying execution on funds of CBN merely because the funds are funds of Nigerian State and/or Central Bank or that such objection is privileged under any international treaty or convention to which the Nigerian State is a party.

. . .

"(20) Therefore for the avoidance of doubt, both the Nigerian State and CBN must be deemed to have waived any immunity from execution on amount kept in the name of CBN or State of Nigeria or any institution of Nigeria (save diplomatically) to the extent to which any amount in (14) above remains unpaid."

"(21) In the unlikely event, if and when Dr Williams is constrained to take legal proceedings to secure and enforce the release of his monies in (14) above the FMG orders and CBN herein agrees that:

"(i)     It would be a matter for Dr Williams to make a choice of his forum for that purpose be it the UK or Nigeria or any other country.

"(ii)    English Law is to apply in (21)(i) above

"(iii)   Neither the Nigerian State nor the CBN· shall raise or invoke any defences so as to deprive Dr Williams of his monies in (14) above or make it financially onerous and burdensome such as requiring Dr Williams to deposit security for costs or suffer from CBN's objections or pleadings such as effluxion of time, acts of state, state privileges, state secrecy and state immunities and the like.  All these defenses and

the like shall be deemed to have been waived without any equivocation and doubt whatsoever."

Fidelity Guarantee at ¶¶ 18, 20-21 (ECF 23-3).

To review, Nigeria waived immunity three times. It agreed to refrain from raising any objection on the grounds that proceedings are precluded because they are against a State (¶ 18); Nigeria expressly waived any immunity from execution; (¶ 19) and in any legal proceeding, Nigeria shall not act to make it financially onerous or raise state immunity defenses (¶ 20).

To be clear, in the Second Circuit "sovereign immunity is not waived in the courts of this country simply because a sovereign entered into a contract that named a third country for arbitration or designated the laws of a third nation to govern the interpretation of the contract" *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 573 (2d Cir. 1993) *citing Mar. Ventures Int'l, Inc. v. Caribbean Trading & Fid., Ltd.*, 689 F. Supp. 1340, 1351 (S.D.N.Y. 1988) and *Verlinden B.V. v. Cent. Bank of Nigeria*, 488 F. Supp. 1284, 1302 (S.D.N.Y. 1980).

But in *Verlinden*, Nigeria was alleged to have implicitly waived immunity because it consented to arbitration under Dutch law, *Verlinden*, 488 F.Supp. at 1300; and in *Mar. Ventures*, 689 F.Supp. at 1350, St. Kitts consented to arbitrate in New York. Those consents to the application of the law of a third party and to arbitration was insufficient to establish waiver.

By contrast, *here* the Fidelity Guarantee *expressly provided* in three separate paragraphs that Nigeria and its incorporated parastatal entities waived the right to raise any sovereign immunity defense in any court related to the execution on a Judgment. The Fidelity Guarantee even included a "for the avoidance of doubt" clause, which is what lawyers add to emphasize when an issue is of the essence of the Agreement and to underline the knowing adoption of that provision in as thorough a manner as possible.

In response, Defendants claim that Mrs Justice Moulder held as a matter of law that the Southern District of New York has no jurisdiction to domesticize this Judgement. They are mistaken.

Dame Moulder ultimately found that Nigeria is not entitled to immunity because of the nature of the underlying claim.

In its discussion of the issue of immunity, Mrs Judge Moulder speculated that one potential basis for immunity was Section 2 of the State Immunity Act, which allows States to waive immunity by submitting to jurisdiction or by agreement, *See* Approved Judgement at ¶ 14 *citing* State Immunity Act at § 2(1) and (2). Only *after* the Court found that "to the extent that there is immunity by virtue of section 3(1) in relation to the underlying fraud claim, that is sufficient for the claimant to satisfy that test." Approved Judgment at ¶ 20 (describing ¶¶ 15-16), the Cout noted that *one* of the waivers in the Fidelity Guaranty has "some ambiguity" whether the waiver refers to the State or to the Central Bank alone, Approved Judgment at ¶ 18.

That Approved Judgment does not collaterally estop Plaintiff from claiming that immunity was waived in this case.

*First* – the Statement by Mrs Justice Moulder was *dicta*. The Judgment stands on the basis of Section 3 of the State Immunity Act, which was "the primary basis which was advanced for the claimant" and which "falls within the definition of a commercial transaction entered into by the State" Approved Judgment ¶ 15.

In other words, even if the final paragraph of § 21 was "ambiguous but on balance" tipped against jurisdiction in UK Courts, that tells us nothing about how a United States District would assess the immunity issue when trying to domesticate a foreign Judgement. To refer back to the key case cited by the Defendants, *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce*

& Metals) Co., 470 F. Supp. 610, 617 (S.D.N.Y. 1979), the Court held: "New York has long given default judgments collateral estoppel effect and considered them conclusive between the parties *with regard to all matters essential to sustain the judgment*." *Fairchild*, 470 F.Supp. at 617 (emphasis added).

The *Judgment* must be given collateral effect, not *dicta* in a transcript of the oral hearing on an issue related to the application of U.K. law. And that's why the Court in *Fairchild* cites *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304 (1929), in which the Court of Appeals held that in assessing whether collateral estoppel attaches "[t]he decisive test is this, whether the substance of the rights of interests established in the first action will be destroyed or impaired by the prosecution of the second." *Schuylkill*, 250 N.Y. at 308. Nothing about this Court asserting jurisdiction to domesticize a UK Judgment would substantively, procedurally or otherwise impair *dicta* in oral argument about an ambiguous procedural issue under U.K. law.

*Second* – Dame Moulder did not base her Judgment on the enforceability of the immunity waiver. She wrote, "[w]hilst it seems to me that the language has some ambiguity, on balance I am not persuaded that section 21 amounts to a prior agreement between the State and the claimant." Approved Judgment ¶ 18. A judge speculating about an argument in the alternative and noting that she is "not persuaded", is insufficient on this Motion to Dismiss to say that collateral estoppel attached and prevents a party from invoking the Defendants' waiver.

*Third* – Mrs Justice Moulder was clear that they only looked at Paragraph 21 as it related to a potential affirmative Defense on the underlying claim. In this case, with the Judgment having already been entered, the waivers in Paragraphs 18 and 20 relating to *collections and enforcement* are at issue and can be assessed *de novo*. This is also true of the first section of Paragraph 21(iii).

<u>*Fourth*</u> – the issue of whether a party waived sovereign immunity and may be subject to jurisdiction before a Court is not some platonic legal issue that has a global and universal answer.  To the contrary, Mrs Justice Moulder assessed the specific application of the U.K.'s State Immunity Act § 2(1) and (2) to the agreement before her.  She recognized the Fidelity Guaranty as a binding agreement between the Parties, Approved Judgment

But at no time did she assess the legal question of whether a United States District Court would have jurisdiction under the Foreign Sovereign Immunities Act.  To put a fine point on it, here are the two relevant statutes side-by-side:

| U.K. State Immunity Act Section 2 | U.S. Foreign Sovereign Immunities Act, 28 U.S. § 1605 |
|---|---|
| (1)  A State is not immune as respects proceedings in respect of which it has submitted to the jurisdiction of the courts of the United Kingdom | (a)  A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case— |
| (2)  A State may submit after the dispute giving rise to the proceedings has arisen or by a prior written agreement; but a provision in any agreement that is to be governed by the law of the United Kingdom shall not be regarded as a submission. | (1)  in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver; |

In the U.K. sovereign immunity may only be waived by "prior written agreement".  It also provides that submission to UK law is not a waiver.  The FSIA uses different standards.

Also, Courts in New York lean into a much broader *alter ego* rule as it relates to foreign governments and their agencies.  A ruling by a UK Court that an agency's waiver of immunity does not apply to its principal is irrelevant to how the new issue of domestication would be assessed under New York law, *See, e.g., Servaas v. Republic of Iraq*, 686 F.Supp.2d 346 (S.D.N.Y. Feb. 19, 2010) recognizing judgment against the Ministry of Industry as against the

Government itself because "under New York law the [foreign] Judgment can be recognized against [the Government itself] 'by ordinary principles of contract and agency.'" *Servaas*, 686 F.Supp.2d 359-60 *citing Jefferies & Co., Inc. v. Infinity Equities I, LLC*, 887 N.Y.S.2d 81, 82 (1st Dep't 2009).

      For these reasons, as it relates to the domestication of a foreign judgment the Defendants waived any defense arising out of sovereign immunity. Further, we respectfully submit that if this Court were to conclude that there was some ambiguity about the scope of the waiver, this Court should allow Discovery (including expert testimony by a foreign Supreme Court Justice of Nigeria) and the intent of the parties to the Fidelity Guaranty on the issue of the waiver.

### b.  <u>Defendants are Otherwise Not Able to Claim Immunity</u>

      Defendants argued that Mrs Justice Moulder's decision had a collateral estoppel effect on this case. If that argument holds up, then on the face of it, the Court would have established that the "dishonest breach of the 1986 trust, falls within the definition of a commercial transaction entered into by the State", Approved Judgment at ¶ 15. We'll also note that the Defendants admitted "CBN and the Nigerian State recognize that the monies were monies obtained by the CBN by fraud, deception and racketeering influenced scheme of premeditated felony." Fidelity Guaranty at ¶ 18, which occurred in London.

      But Defendants argue that the commercial exception to sovereign immunity cannot apply because there was no direct effect in the United States, Memo in Support at pp. 15-16; that no expropriation is alleged because of the act of state doctrine, Memo in Support at p. 18; and there was no tortious act or omission.

Let's be clear:

> "For the 'commercial activity' exception to apply . . . 'the lawsuit for which jurisdiction is sought must be (1) based upon an act outside the territory of the United States; (2) that was taken in connection with a commercial activity of the foreign state outside this country; and (3) that caused a direct effect in the United States."

*Servaas Inc. v. Republic of Iraq*, 686 F. Supp. 2d 346, 353 (S.D.N.Y. 2010) *citing*

*Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F.Supp.2d 781, 793 (S.D.N.Y. 2008).

The "lawsuit for which jurisdiction is sought" is the enforcement of the Judgment entered in the United Kingdom in which Mrs Justice Moulder ordered the Defendants – who maintain accounts in the United States through the parastatal Central Bank of Nigeria – to disgorge those funds held in the United States to the Plaintiff. The Complaint sufficiently alleges that the funds at issue in this Complaint are funds held at Chase Bank here in New York those are the funds that Defendants have refused to pay.

Further, even if the Court were to look into the underlying history of this case to define the "lawsuit for which jurisdiction is sought" being the underlying extortion and commitment (but failure) to repay Plaintiff in full – that involves the expropriation of funds into U.S. dollar accounts held in New York.

Further, the Defendants agreed in the Fidelity Guaranty to not raise any defense arising out of sovereign immunity. So even if the Court were to find that it was not a full waiver of jurisdiction, at the least, it estops the Defendants from raising any defense related to jurisdiction.

For these reasons the commercial exception applies, even if the Defendants did not waive immunity.

## II.    <u>This Court Can Domesticize the Judgment</u>

### a.    <u>The Judgment is Final</u>

I'm pleased to report that a hearing on the Motion to Set Aside will be held in mid-December of this year.  Further, I am informed that at this time, no Stay remains in force on the enforcement of the Judgment.

### b.    <u>New York is Most Convenient</u>

The funds are here.  The failure to pay Plaintiff is taking place here.

Further, Defendants maintain their U.S. dollars accounts at Chase Bank here in Manhattan and any limitation on collections pursuant to 28 U.S.C. § 1611(b)(1) are moot because as argued above, the Defendants waived any claim of immunity.

I am further informed that in collections actions in London, the Plaintiff was informed that the funds to satisfy the Judgment are held here in New York and Defendants argued that New York was the appropriate forum.

14

**F.     Conclusion**

For the reasons argued above, we respectfully submit that the Motion to Dismiss should be denied in full and this matter proceed to a Judgment on the Pleadings and/or Motion for Summary Judgment upon the Defendants' entry of an Answer.

DATED:      **NOVEMBER 21, 2023**

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com
*Counsel for Plaintiff*

15

**<u>CERTIFICATE OF SERVICE</u>**

   I hereby certify that on November 21, 2023, simultaneous with the filing of this Submission, a copy of this submission was served upon counsel for all Appearing Parties using the court's CM/ECF system which will provide a notice of electronic filing to all counsel.